[Civ. No. 21708. Second Dist., Div. Three. Aug. 26, 1958.]

BY-BUK COMPANY (a Partnership), Respondent, v.
PRINTED CELLOPHANE TAPE COMPANY (a Part-
nership) et al., Appellants.

Harry J. Miller and Levoy, Miller & Salinger for Appellants.

Laughlin E. Waters, United States Attorney, Richard A. Lavine, Assistant United States Attorney, Chief, Civil Division, and Hiram W. Kwan, Assistant United States Attorney, as Amici Curiae, on behalf of Appellants.

Fulwider, Mattingly & Huntley and Henry Grivi for Respondent.

NOURSE, J. pro tem.*—Defendants appeal from a judgment enjoining them from using, assembling, or manufacturing certain machinery which was a trade secret of the plaintiff; ordering them to dismantle the machines assembled by them that embodied plaintiff's trade secret and decreeing that the plaintiff is entitled to damages, both compensatory and punitive, to be fixed upon an accounting hereinafter to be had.

Prior to June of 1954 both the plaintiff and the defendants Gevirtz, doing business as copartners under the name of Printed Cellophane Tape Company, hereinafter called "Tape Company," had engaged in the business of manufacturing and selling pressure-sensitive adhesive tape for industrial uses.

In the spring of 1954 Homer G. Buck, one of the partners of plaintiff partnership, hereinafter called "Buck," learned that a competitor, whose manufacturing operations were conducted in the eastern United States, was manufacturing and selling overlapping masking discs and die-cut masks of pressure-sensitive tape for use by manufacturers in masking certain parts of apparatus which they desired to shield from abrasives or paint. Desiring to produce a similar product Buck commenced experiments for the purpose of constructing machines or apparatus which would produce die-cut masks and overlapping masking discs. While Buck was in the process of developing these machines the defendant Robert Black, hereinafter called "Black," entered plaintiff's employ as a part-time employee and rendered some aid to Buck in the assembly of the machines upon which Buck was working.

---

*Assigned by Chairman of Judicial Council.

Black was a disabled veteran of World War II and was entitled to the benefits of Public Law 16, 78th Congress. On May 1st plaintiff, hereinafter called "By-Buk," entered into a contract with the Veterans Administration under which it undertook to accept "from time to time and within its own discretion in each case, disabled veterans of World War II for a course of training on the job" which would render each employable as a "DIE MAKER (Steel Rule)." By the contract it agreed to provide competent instruction to each trainee accepted. The agreement further provided that it might be terminated by the establishment or the Veterans Administration on 15 days' notice and that each veteran accepted for training would be under the control and supervision of By-Buk and subject to the same rules and regulations "governing the conduct of *other* comparable *employees.*" (Italics ours.) On the same date Black entered plaintiff's employ to be trained as a die maker.

At about that time there was prepared on a form of the Veterans Administration a schedule of the skills in which Black was to be trained, the time allotted to instruction in each skill and a statement of the wages to be paid; the starting wage being $1.50 an hour and increasing in 6-month steps of $.25 an hour.[1] After May 1st Black continued to work with Buck on the assembling of the two machines and after their completion he operated the machines at times for the purpose of producing die-cut masks and overlapping discs. Buck, on several occasions both before and after May 1st, told Black that the processes of die-cutting masks and overlapping discs which were embodied in the machines were not to be disclosed to others and plaintiff at all times endeavored to prevent others from examining the machines and to keep its processes of producing the die-cut masks and overlapping discs secret.

Black continued in his employment with By-Buk until June 1954 and during the period of his employment By-Buk gave him training in the various skills which it had undertaken to teach him.

On June 30, 1954, Black terminated his employment with the plaintiff and in August entered the employ of defendant Tape Company. Upon entering the employ of Tape Company Black disclosed to Tape Company and defendants Gevirtz plaintiff's methods of producing die-cut masks and overlapping discs and, under their instructions, constructed two machines which were substantially copies of plaintiff's machines.

---

[1] By agreement this wage schedule was not strictly adhered to.

Upon the completion of these machines defendant Tape Company commenced the production of die-cut masks and overlapping discs and sold these articles to the trade in competition with the die-cut masks and overlapping discs produced by plaintiff. In producing these it used materials similar to those used by plaintiff. In its brochures sent to the trade in soliciting the sale of overlapping discs plaintiff had used a picture showing a roll of overlapping discs and the hands of a person removing the discs from the carrier tape. It advertised its overlapping discs under the name of Kwiky Dots. In its brochures defendant Tape Company used substantially the same picture of the hands removing the overlapping dots from the carrier as did the plaintiff[2] but gave its product the name of Pee-Cee Tapes.

The court found the facts in substantial accordance with the facts we have stated. Each of the facts we have stated is supported by substantial evidence. Other findings of the trial court which are attacked by appellant will be noted later in our discussion of the case.

Under numerous headings defendants and amicus curiae attack the judgment of the trial court as impairing the purposes of the Veterans Administration training statutes and regulations (Public Law 16, and regulations adopted thereunder) and as being in contravention of the contract entered into by plaintiff with the Veterans Administration.

Boiled down, it is apparently defendants' contention that Black was not an employee of the plaintiff but that plaintiff had sought to teach him as a student its business and that therefore upon terminating his relationship with plaintiff he was entitled to put to use any knowledge that he had acquired of plaintiff's business and processes of manufacturing. We see no merit in these contentions.

Plaintiff's undertaking with the Veterans Administration was to train Black, *as its employee,* in certain skills in order that he might be qualified for employment as a die maker. By the express terms of the contract between plaintiff and the Veterans Administration any person employed by plaintiff and whom it agreed to train was subject to the same obligations, rules and regulations as any other employee. Irrespective of whether there was an express agreement on Black's part (which defendants and their amicus curiae in their brief

---

[2]Defendants ceased the use of this picture prior to the commencement of the action.

choose to term a "secret agreement") not to divulge the means by which plaintiff was able to produce its die-cut masks and overlapping discs, that duty was implied in the contract of employment. ■ Every employee is under the implied obligation not to divulge or use confidential information which he acquires by reason of his employment. ■ Such information is the property of the employer and the employee holds that property in trust for the employer and cannot use it in violation of his trust. (*Empire Steam Laundry* v. *Lozier,* 165 Cal. 95, 100-102 [130 P. 1180, Ann.Cas. 1914C 628, 44 L.R.A. N.S. 1159]; *Riess* v. *Sanford,* 47 Cal.App.2d 244, 246-247 [117 P.2d 694]; *Stone* v. *Goss,* 65 N.J. Eq. 756 [55 A. 736, 103 Am.St.Rep. 794, 63 L.R.A.N.S. 344]; *Irving Iron Works* v. *Kerlow Steel Flooring Co.,* 96 N.J.Eq. 702 [126 A. 291]; 28 Am.Jur. § 111, p. 304.) The proposition is well stated in the work last cited, as follows: "The disclosure by an employee of trade secrets and other confidential information obtained by him in the course of his employment is a breach of trust, and it is well settled that a court of equity will restrain any threatened disclosure or use thereof to the detriment of the employer. The character of the secrets, if peculiar and important to the business, is not material. They may be secrets of trade, secrets of title, secrets of process of manufacture, or any other secrets of the employer important to his business. . . .

"Injunctive relief against disclosures of trade secrets and other confidential information obtained by an employee is undoubtedly available to the employer, where the employee has expressly agreed not to disclose the trade or business secrets. Such an agreement is not an unlawful restraint of trade unless it is more extensive than is reasonably required to protect the master's interests. But an express negative covenant not to make use of trade secrets or processes is not indispensible to the granting of the relief. It is sufficient if from the circumstances of the case and the relation of the parties as employer and employee an agreement to that effect may be implied from the confidential relation. In fact, it is said that in the case of an employee such an obligation exists in the absence of any stipulation to the contrary."

■ The obligation not to violate the duty of confidence, being implied by law, there was nothing secret about it. Knowledge of it was imputed to the Veterans Administration and if they desired to exempt a trainee from such obligation they undoubtedly would have expressed it in the contract. To

express it, however, would be to defeat the very object of the contract for it is impossible to envision an employer who would accept an employee who was, in effect, licensed to steal its secrets. As Black could not use or divulge the secrets of plaintiff without violating his trust, Tape Company could not with knowledge of that trust make use of plaintiff's property (its secrets), and when it attempted so to do, it became a constructive trustee of that property. (*Irving Iron Works* v. *Kerlow Steel Flooring Co., supra,* Civ. Code, § 2243.)

■ There is no conflict between the federal statute providing for the training of disabled veterans in a trade and the law of this state which makes it the duty of an employee not to divulge the secrets of his employer. The employee under training may upon completing his training use, in his trade, all of the skills that have been taught him but may not so use those skills as to violate his trust.

The judgment here does not enjoin the defendant Black from using all of the skills which he learned under the training of By-Buk. It only enjoins him from divulging the secrets of plaintiff which he acquired while being trained in the skills necessary to his contemplated trade.

Of the numerous cases cited by defendants and amicus curiae only two are even remotely in point. *Young* v. *Hampton,* 36 Cal.2d 799 [228 P.2d 1, 19 A.L.R.2d 830], cited by counsel is not controlling here. There the contract sought to be enforced by the plaintiff was one entered into in direct violation of a federal statute and if enforced would have defeated the very purposes of the statute. That is not the case here as we have heretofore pointed out.

In *Orkin Exterminator Co.* v. *Dewberry,* 204 Ga. 794 [51 S.E.2d 669], the plaintiff-employer sought to enforce, against an employee whom it accepted for on-the-job training, a contract by which the employee agreed not to engage in the trade or business as to which the plaintiff had undertaken to train him at any place in the State of Georgia excepting a very small portion thereof for a period of one year after the termination of his employment. The Supreme Court of Georgia properly held, not only that the contract was void as in restraint of trade, but, that its effect was to defeat the very purposes of the training contract. Such is not the case here. In the present case Black was free to, and under the express terms of the decree here, is permitted to, use all of the skills as to which he was trained by plaintiff. Plaintiff did not undertake to train Black to enter into the business of

manufacturing and selling the articles which it was engaged in manufacturing and selling, but only to train him as a die maker. This trade he is free to follow.

. It was stipulated at the trial that all of the component parts of the machines developed by plaintiff were standard parts which could be procured by anyone in the open market and defendants therefore contend that the finding of the trial court that the machines were unique or unusual is unsupported by the evidence. In making this assertion defendants misconceive what constitutes a trade secret. ■ It is not necessary in order that a process of manufacture be a trade secret that it be patentable or be something that could not be discovered by others by their own labor and ingenuity. ■ Restatement, Torts, volume 4, section 757, comment b, page 5, defines the term as follows: ''A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. . . . Generally it relates to the production of goods, as, for example, a machine or formula for the production of an article.''

The character of the secret if important to the business is not material but it must, as the term implies, be kept secret by the one who claims it. (*Riess* v. *Sanford, supra,* 47 Cal. App.2d 244, 246; Rest., Torts, vol. 4, § 757, comment b, pp. 5, 6.)

■ Under the evidence here plaintiff's machines clearly were trade secrets within the definition above quoted. The evidence shows that Buck, before commencing the development of the machines in question, attempted to learn of any machines which would produce the results which he desired, i.e., the same results which had been accomplished by an eastern competitor, but was unable to find any machines or plans for machines to guide him and that thereafter he, by a system of trial and error, was able, by combining various parts, to produce the results which he desired. The means of producing this result were embodied in the machines which he developed and these means he kept secret.

The evidence further shows without conflict that the defendant Tape Company did not and was unable to produce the products in question until, through the information divulged to it by Black, it copied plaintiff's machines. It is undoubtedly true that if Tape Company had used the same thought, labor and ingenuity which were used by plaintiff it

might have been able to secure the same results that plaintiff did. But this fact does not destroy plaintiff's right not to have its processes wrongfully disclosed to others and used to its detriment. As said by the court in *Herold* v. *Herold China & Pottery Co.*, 257 F. 911, 913 [169 C.C.A. 61]: "[S]ecret formulas and processes . . . are property rights which will be protected by injunction, not only as against those who attempt to disclose or use them in violation of confidential relations or contracts express or implied, but as against those who are participating in such attempt with knowledge of such confidential relations or contract, though they might in time have reached the same result by their own independent experiments or efforts." Or, as said by Mr. Justice Holmes in *Chicago Board of Trade* v. *Christie G. & S. Co.*, 198 U.S. 236 [25 S.Ct. 637, 49 L.Ed. 1031]: "The plaintiff has the right to keep the work which it has done, or paid for doing, to itself. The fact that others might do similar work, if they might, does not authorize them to steal the plaintiff's."

 There is likewise no merit in defendant's claim that the trial court erred in permitting Buck to answer the question: "Were all these features that you have just testified to novel with you; in other words, were they new as far as you knew?" Defendants claim that the question of novelty was one to be determined upon the testimony of experts only and that the question called for expert testimony which the witness was unqualified to give.

We have not been cited to any authorities which hold that, in cases of this character, novelty can only be proven by expert testimony and in our opinion that is not the fact. It is further our opinion that novelty, in the sense that plaintiff's process was conceived by him and was unknown to others, was proven by the testimony of Buck as to his research and his trial and error methods of developing the machines in question. Further, the question did not call for any opinion of the witness as to whether or not the machines were novel, but only as to his knowledge as to the existence of like machines.

As an affirmative defense defendants pleaded in general terms that the plaintiff came into court with unclean hands and was therefore not entitled to equitable relief. The trial court found that the allegations of this affirmative defense were untrue. Defendants now assert that this finding is contrary to the evidence. They assert that the evidence established that plaintiff breached the contract between it and the

Veterans Administration in failing, on May 1, 1954, to increase Black's pay to $2.00 per hour and that the evidence further showed without conflict that plaintiff had copied from the patent of a competitor, Hulslander, in producing and selling die-cut masks and overlapping discs and in that he had, by using the word "Kwiky" in connection with his product, appropriated a trade mark of another manufacturer (one Brady) who had for many years been using the registered name "Quik."　　Insofar as the breach by plaintiff of his contract with the Veterans Administration is concerned, it is sufficient to say: first, that the trial court found on conflicting evidence that the relationship between Black and the plaintiff was terminated by Black for the purpose of entering into another occupation; second, that under the contract with the government, Black was not obligated to stay in plaintiff's employ and that plaintiff was not obligated to continue with his training but might terminate his training at any time on 15 days' notice to the government. Further, plaintiff is not seeking to enforce the contract with the government or the contract of employment made with Black but is seeking only to restrain a tortious act of Black in wrongfully using plaintiff's property.

As to the other acts which it is alleged render plaintiff's hands unclean, it is sufficient to say that they are entirely disconnected with the subject matter of this action or the injury which the decree of the trial court seeks to remedy. Whether plaintiff has infringed upon the patent of Hulslander (this patent does not cover any process or machinery for the production of die-cut masks or overlapping discs but only the products themselves) is a matter between plaintiff and Hulslander and the same is true as to the question of whether plaintiff has appropriated Brady's trade name. Any wrong done in either case was done to the owner of the patent or the trade mark and with these wrongs defendants have no concern. (*Bradley Co.* v. *Bradley,* 165 Cal. 237 [131 P. 750]; *Germo Mfg. Co.* v. *McClellan,* 107 Cal.App. 532 [290 P. 534].)

The defendants assert that the trial court erred in excluding evidence offered by the defendants that as of the time of trial defendants had made certain improvements and changes in the machines as originally built by them and which copied plaintiff's machines. They base their claim of error upon the proposition that equity acts upon conditions as they exist at the time of trial and not necessarily at the commencement of the action. There can be no doubt of the

truth of the proposition stated but it is not applicable here for defendants cannot escape responsibility by showing that they have improved upon or modified plaintiff's process. Even though they may have modified or improved the plaintiff's process they are still wrongfully using its property. (See Rest., Torts, vol. 4, § 757, comment c, p. 9.)

Defendants assert that certain provisions of the decree are uncertain and so broad as to render the decree invalid as in restraint of trade in contravention of the Sherman Anti-trust Act (15 U.S.C.A. §§ 1, 2) and of the statutes of this state against contracts in restraint of trade. With this contention we are in agreement. Plaintiff's sole right was to a decree which would protect it against the wrongful use of its trade secrets. It had no right to enjoin the defendants from the production through proper means of the articles which its machines were designed to produce. It is clear from the evidence that others than the plaintiff had assembled machines which would produce the same results as plaintiff's and defendants were free to acquire such machines and to use them in the production of die-cut masks and overlapping discs and the court could not by decree limit this right. The decree here, however, enjoins plaintiffs from acquiring and using any machine which is similar to the machines manufactured and used by plaintiff irrespective of whether such machines may have been solely the product of the ingenuity of some third person and irrespective of the fact that such machines may have been manufactured and in use prior to the time plaintiff conceived his method of producing the articles in question.

The fact that the decree is too broad in its terms does not require a reversal of the judgment but only a modification of the injunctive provisions of the decree. What these modifications should be we will hereinafter indicate.

All of the assignments of error with which we have heretofore dealt concern the injunctive relief given by the decree. While there are other assignments of error addressed to the injunctive features of the decree which have not been discussed by us in detail, they are either covered by the assignments which we have disposed of or contain so little substance as not to require discussion.

The remaining assignments of error pertain only to those portions of the judgment which decree that the plaintiff is entitled to an accounting and to both compensatory and punitive damages.

We now address ourselves to these assignments of error.

The trial court found that the picture showing a roll of tape being unwound and discs detached therefrom by two hands, had acquired a secondary meaning in the minds of the buying public indicating and designating plaintiff as the source of the products in connection with which said picture appears. It further found that the defendants had sold substantially large quantities of die-cut masks and overlapping discs to customers and prospective customers of plaintiff as the same as plaintiff's product under a different name, and that the defendants patterned their entire scheme of doing business after that of plaintiff. As the court did not, by its decree, enjoin the defendants from the use of said picture or from the sale of any products other than those produced by the machines which defendants had wrongfully constructed as copies of plaintiff's, and as it did not enjoin the defendants from continuing their scheme of business, we assume that these findings were made as a basis for later assessing damages.

Asserting that none of these findings are supported by the evidence, defendants have, in conformance with the rules on appeal, directed our attention to the evidence bearing upon the issues thus found by the court. Plaintiff does not assert that there is other evidence than that specified by defendants of the witness Jenkins and to plaintiff's Exhibit Number 14, except that it directs attention to excerpts from the testimony the brochure adopted by the defendants, a copy of which is attached to the amended complaint as Exhibit Number 3. A careful study of the evidence to which our attention has been directed as well as our independent examination of the transcript of oral proceedings and the exhibits, fails to disclose any evidence which would support any of these findings.

The finding that the picture in question had acquired a "secondary meaning" finds no support in the evidence. In order that a name or a symbol may be said to have acquired a "secondary meaning" and as such become the property of the person using it, it is necessary that it shall have been so used as to identify the articles, in connection with which it is used, in the mind of the purchasers thereof as the product of the person using the name or symbol. (*Morse-Starrett Products Co.* v. *Steccone*, 86 F.Supp. 796; *Selchow & Righter Co.* v. *Western Printing & Litho. Co.*, 142 F.2d 707; Rest., Torts, vol. 3, § 716, comment b, p. 560.)

Here the evidence shows without conflict that pic-

tures of human hands being used to detach one material from another, had been used not only by defendants but others long prior to the use of such a device or symbol by the plaintiff. There was an entire lack of evidence that any members of the buying public associated the symbol with overlapping discs produced by the plaintiff or that the symbol was used for any other purpose than to show the facility with which the overlapping discs could be removed from the carrier tape and this would apply to such articles manufactured by other persons. The evidence shows, without conflict, that such discs had been manufactured by others than the plaintiff prior to his production and in fact that he developed the machines in question in order to produce overlapping discs similar to those that had theretofore been manufactured by another.

The finding that defendants had sold their products under the representation that they were the same as plaintiff's has no foundation in the evidence. The defendants offered their goods as that of their own manufacture and under an entirely different name from that used by the plaintiff and the fact that defendants' goods were of the same design and to be used for the same purpose as plaintiff's does not, under the facts here, constitute any basis for an award of damages. The finding is, however, for practical purposes, immaterial for the defendants remain liable in damages for the sale of die-cut masks and overlapping discs produced by them by means of the machines which they constructed through the use of plaintiff's trade secrets.

The finding that the defendants "patterned their entire scheme of doing business after that of plaintiff" is without support in the evidence. The only evidence plaintiff points to is the brochure published by the defendants, but a comparison of this brochure with that of the plaintiff convincingly demonstrates that there was no copying by defendants and nothing in defendants' brochure that would enable them to palm off their goods as those of the plaintiff or which would lead any member of the buying public to believe that defendants' goods were the goods of, or the same as those of, the plaintiff.

It may be said in passing that the defendants have the right to produce die-cut masks and overlapping discs and to use in that production the same materials as used by the plaintiff so long as their production is by proper means and without the use of plaintiff's trade secrets and so long as they are not

offered to the public in such a manner as to lead the buying public to believe that defendants' goods are those of the plaintiff. Die-cut masks and overlapping discs were not trade secrets of the plaintiff and the plaintiff had no property right in them as such.

The fact that the findings above mentioned are unsupported by the evidence does not require a reversal of the judgment inasmuch as the issue of damages is yet to be adjudicated.

Pursuant to the provisions of section 956a of the Code of Civil Procedure, we substitute the following findings of fact for those made by the trial court:

Paragraph 8 of the findings is deleted and in lieu thereof we find:

"VIII. That on or about the 24th day of August, 1954, and in spite of such knowledge and in derogation of plaintiff's said rights, the defendants and each of them, acting in concert and for the benefit of defendants and not plaintiff, wrongfully, improperly and unlawfully copied and appropriated plaintiff's secrets pertaining to said machinery and equipment processes as included in all of the machines particularly described in Paragraph II hereof and in connection therewith defendant Black disclosed all of the details as to the methods of building and operating said machines.

"That during said period and thereafter defendants, through the use of the machines assembled by and containing the trade secrets of the plaintiff, produced and sold substantial quantities of die-cut masks and overlapping discs to customers and prospective customers of the plaintiff."

Paragraph 9 of the findings is deleted and in lieu thereof we find:

"IX. That it is untrue that the defendants have patterned their entire scheme of doing business after that of the plaintiff. That it is true that the defendants have used and distributed a sales brochure, a true and correct copy of which is attached to plaintiff's first amended complaint, marked Exhibit 3, but it is further true that the said brochure does not copy or simulate the brochure of the plaintiff and that the defendants did not thereby mislead the buying public or any member thereof."

Paragraph 10 of the findings is deleted and in lieu thereof we find:

"X. That the defendants and each of them will, unless enjoined, without the permission or consent of plaintiff and

against plaintiff's will, appropriate to their own uses and purposes the machines and processes of manufacture described in Paragraph II of these findings, and plaintiff will suffer great and irreparable damage for which there is no adequate or speedy remedy at law.''

The judgment appealed from is modified to read as follows:

''It Is Now Ordered, Adjudged and Decreed

''1. Defendant Printed Cellophane Tape Company, a partnership, Sydney Gevirtz, Don Gevirtz and Robert Black, and each of them are ordered to dismantle the two machines constructed by them for the manufacture of overlapping discs and die-cutting masks and they, and each of them, are enjoined together with their agents, servants and employees, from rebuilding said machines or from disposing of any of said machines or machinery, or any machinery or equipment embodying the combination of ideas, structures, techniques or originations of plaintiff or modification thereof or substitute therefor, except that the punch press units without the other features added thereto by defendants may be disposed of if defendants so desire; and, each of the defendants is forever enjoined from revealing to others the inventions and processes of plaintiff as contained in the machines so dismantled.

''2. The defendants Cellophane Tape Company, a partnership, Sydney Gevirtz, Don Gevirtz and Robert Black, and each of them is hereby permanently enjoined from manufacturing, using or placing in use, directly or indirectly, any and all machines substantially similar to the machines which they are, by Paragraph 1 of this decree, ordered to dismantle.

''3. Defendants Printed Cellophane Tape Company, a partnership, Sydney Gevirtz, Don Gevirtz and Robert Black, and each of them, are enjoined permanently from selling or disposing of any and all overlapping discs or die-cut discs heretofore manufactured and produced by the overlapping machine and die-cutting machine hereinbefore referred to.

''4. Defendants and each of them are ordered to give an account of all of the sales made by defendants of the products made on the overlapping machine and die-cutting machine heretofore described so that damages relating thereto may be determined.

''5. Plaintiff is entitled to a judgment awarding damages against the defendants and each of them, the total amount thereof to be determined following the accounting hereinbefore ordered.

"6. Plaintiff is entitled to a judgment awarding punitive damages against the defendants and each of them, the amount thereof to be determined following the accounting heretofore ordered.

"7. The defendant Robert Black is not enjoined from using any of the skill, knowledge or information obtained by him as to the making of dies, the use thereof, the operation of a punch press or other machine, which skill, knowledge or information was obtained by him while under training by the plaintiff, so long as his use thereof does not involve the use of the trade secrets of the plaintiff as to the manufacture or assembly of machines or devices for the production of overlapping discs or die-cut discs.

"8. Plaintiff is awarded its costs of suit incurred herein against the defendants and each of them in the amount of $596.85."

The judgment as above modified is affirmed. Each party to bear his own costs on appeal.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied September 12, 1958, and the opinion and judgment were modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied October 22, 1958.