[Civ. No. 24474.   Second Dist., Div. Two.   May 23, 1961.]

UNGAR ELECTRIC TOOLS, INC. (a Corporation), Respondent, v. SID UNGAR COMPANY, INC. (a Corporation) et al., Appellants.

Robert Haves and Morris E. Cohn for Appellants.

Max Fink, Hyman O. Danoff and Howard L. Thaler for Respondent.

McMURRAY, J. pro tem.*—After a protracted trial, the trial court rendered judgment in favor of plaintiff-respondent Ungar Electric Tools, Inc., in the sum of $1,600 damages and permanently enjoined the defendants-appellants Sidney D. Ungar and Sid Ungar Company, Inc., from manufacturing or assembling heating units (sometimes known as "tips") by utilizing knowledge which had been acquired with respect to respondent's trade secrets relating to ingredients, respondent's sources of supply of materials (specifically not including cement) and respondent's techniques and processes of manufacture and assembly of its heating units except that appellants were not enjoined from the use of the shape, dimensions and iron plating of the metallic parts of the soldering tips heretofore made by them.

The appellants were, in addition, permanently enjoined from selling or distributing any soldering heating units of the specifications as had previously been manufactured or assembled by them and from the further manufacturing, assembling, distributing or selling thereof.

Appellants were furthermore permanently enjoined from making, selling or distributing any other heating units which were manufactured or assembled by utilizing the said trade secrets of the respondent.

Finally the judgment specifically did not preclude the appellants from the manufacture, sale or distribution of soldering-iron heating units (other than units of the specifications as were manufactured or assembled by the appellants as set forth in the specific prohibitions) provided the same were the result of independent research and development whether the same be of a screw type base or candelabra base or otherwise.

This judgment is supported by findings of fact wherein the trial court found that respondent had developed electric soldering tools over a period of many years, and had expended substantial funds, effort and time in the development thereof, with respect to the ingredients used therein, sources of supply of materials, and techniques and processes of manufacturing and assembling. It was also found that respondent had taken

---

*Assigned by Chairman of Judicial Council.

reasonable precautions to preserve information concerning the ingredients used in its products, its sources of supply of materials, excluding the source of supply of cement used, and had taken such reasonable precautions to preserve its technique and process of manufacturing and assembling as secret and confidential; that appellants substantially duplicated the soldering products of respondent, excluding soldering tools, by utilization of knowledge acquired by appellant Sidney Ungar as an officer and employee of respondent relating to the secret and confidential matters mentioned. It was further found that appellants employed four former employees of respondent to assist them in substantially duplicating respondent's products, and at no time did appellants employ for manufacturing or assembling products persons who were not former employees of respondent, with the exception of one employee who proved to be unsatisfactory.

It was further found that in developing their products, the appellants expended only nominal sums or effort in connection with the development thereof, and did not develop their products independently of their knowledge of the ingredients, sources of supply of materials, and techniques and processes of manufacturing and assembling employed by respondent, which knowledge was gained by appellant Sidney Ungar in confidence in the course of his prior employment by the respondent.

It was also found that the words "Tips" or "Tiplets" had not acquired a secondary meaning insofar as the manner in which the respondent used said names to describe its products, and also that respondent failed to prove that the use of certain catalogue numbers to designate its various products had acquired a secondary meaning. It was also found that the names of respondent's customers were not confidential, and that respondent had no special right or interest in the method in which it packaged its various products, and it was further found that, since the filing of the principal action, the appellant corporation had ceased using a name which might confuse it with respondent corporation.

The court also found that respondent and appellant Sidney Ungar entered into a written agreement entitled "Offer of Settlement" and "Release"; that said Offer of Settlement provided, among other things in paragraph 7 thereof, as follows:

"(f) It is specifically acknowledged by Eldon and Ungar

Electric, and agreed by them, that Sidney D. Ungar may compete with Eldon and Ungar Electric hereafter, either personally or by participating in or starting a competing business, or otherise. It is agreed by Eldon and Ungar Electric that Sidney D. Ungar may compete with them either personally or as set forth above.

"Neither Sidney D. Ungar, on the one hand, nor Eldon or Ungar Electric, on the other, will voluntarily say anything which will reflect discredit or dishonor upon the other by reason of any fact or event prior to the date hereof.

"The provisions of this contract, including but without limitation thereto, the provisions of this paragraph 7 providing for rendition of services in giving information, shall in no way limit the right of Sidney D. Ungar to compete with Ungar Electric or Eldon."

As conclusions of law the trial court found (1) that respondent had trade secrets properly protected by a court of equity relating to its manufacture and assembly of heating units, consisting of the ingredients it uses, its source of supply of materials excepting and excluding cements and its techniques and processes of manufacture and assembling; (2) that appellant Sidney D. Ungar occupied a confidential relationship as between himself and the respondent corporation, relating to respondent's said trade secrets; (3) that the appellants violated the above-described confidential relationship by utilizing the above-described trade secrets of the respondent in the manufacturing and assembling of their soldering-iron products; and further concluded (4) that the "Offer of Settlement" and "Release" hereinabove partially set forth did not give the appellants the right to utilize trade secrets of respondent in the manufacturing and assembling of their soldering products or to sell or distribute products manufactured or assembled by utilizing such trade secrets.

The records and briefs in this matter disclose an unfortunate antagonism between the principals to the action. The reporter's transcript of over 3,400 pages reflects this bitterness, and some portions of the briefs are impaired in their efficacy by the same emotion.

Appellants basically contend that the injunction is far too broad; that there is no evidence of any trade secrets in the entire record; and that, even if there were such trade secrets, they had been disclosed to the public by a patent which had expired before appellants commenced their operations. The appellants also contend that the actions of the trial court in

dismissing proceedings for a new trial and denying a motion for relief filed under the provisions of Code of Civil Procedure, section 473, were erroneous and call for a reversal.

Respondent, throughout its brief argues matters which were determined adversely to it as though they had been determined in its favor, and, of course, stoutly defends the action of the trial court in dismissing the motion for new trial and denying the motion under Code of Civil Procedure, section 473.

A reading of the transcript reveals that the trial court's findings of fact are amply supported by evidence which, we believe, render all of appellants' arguments on the facts valueless. The trial judge displayed almost unbelievable patience in the course of this protracted trial, and from the record appears to have earnestly followed the testimony and to have properly decided the matter. [■■ Whether there is a breach on the part of an employee, or others, who are alleged to have divulged any of the trade secrets of his employers, whether such duty not to divulge is expressed in a contract or not, is a question of fact. (*Sarkes Tarzian, Inc.* v. *Audio Devices, Inc.,* 166 F.Supp. 250, 264.) Such being the case, the findings of the trial court here will not be disturbed unless it is demonstrated that such findings are not supported by the evidence.

■ "A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. . . . Generally, it relates to the production of goods, as, for example, a machine or formula for the production of an article." (Rest., Torts, vol. 4, § 757, comment b, p. 5; *By-Buk Co.* v. *Printed Cellophane Tape Co.,* 163 Cal.App.2d 157, 166 [329 P.2d 147].) ■ The character of the secrets, if peculiar and important to the business, is not material; but it must, as the term implies, be kept secret by the one who creates it. (*Riess* v. *Sanford,* 47 Cal.App.2d 244, 246 [117 P.2d 694].) ■ The courts will protect the use of confidential information acquired by an employee in the course of his employment. ■ "Such information is the property of the employer and the employee holds that property in trust for the employer and cannot use it in violation of his trust." (*By-Buk Co.* v. *Printed Cellophane Tape Co., supra,* at p. 164, and cases therein cited.) ■ It is so well established as to need no extensive citations of authorities that a former employee may not use trade secrets learned through his employer to that employer's disadvantage.

■ Appellants' complaint that the injunction here is too broad is ill-founded when it is considered that the matters treated by the injunction are matters within the peculiar knowledge of the appellants, and that any injunction which spelled out the nature of the trade secrets involved would, in and of itself, destroy the existence of those very secrets. The case of *Head Ski Co.* v. *Kam Ski Co.*, 158 F.Supp. 919 is extremely persuasive in relation to the instant case. Here, the contention was made that the trade secrets were allegedly disclosed by the patent. However, from the record, it appears that there was a conflict as to whether the patent covered the present soldering-iron products of respondent, or applied to a woodburning tool which it also manufactured. In the Head Ski case, *supra*, the same contention was made, and it was said, at page 923, quoting *Franke* v. *Wiltschek*, 209 F.2d 493, at p. 495 : " 'It matters not that the defendants could have gained their knowledge from a study of the expired patent and the plaintiffs' publicly marketed product. The fact is that they did not. Instead they gained it from the plaintiffs via the confidential relationship, and in so doing incurred a duty not to use it to plaintiffs' detriment.' "

Many of the cases cited by the appellants deal with the unfair competition involved in the situation where a former employee uses or discloses customer lists. These cases are not here controlling.

■ However, as has been stated, the reason that courts will issue injunctions to guard against such activities as are disclosed in this record is to enforce "increasingly high standards of fairness or commercial morality in trade." (Rest., Torts, Introductory Note, chap. 35, p. 540.) This case is one which requires such sanction. The interpretation placed upon the contract provisions before the trial court was a correct one in our opinion.

■ The question as to whether or not the action of the trial court in dismissing the proceedings for a new trial was proper was also correctly determined.

After findings of fact and conclusions of law had been signed, and the judgment had been signed, filed, and entered, notice of entry of judgment was served on counsel for appellants and filed on November 13, 1959. A written "Notice of Intention to Move for a New Trial and for Other Relief" dated November 18, 1959, was served on respondent on that date, and was filed on November 19, 1959. The notice of

intention stated that the motion for a new trial would be upon the grounds set forth in subparagraphs 1, 3, 4, 6 and 7 of Code of Civil Procedure, section 657. The notice did not designate whether the motion would be made upon affidavits, or the minutes of the court, or both. No affidavits nor memorandum of points and authorities were filed contemporaneously with the filing of the notice of intention. Respondents moved to strike the motion for new trial upon this ground among others.

On November 23, 1959, the motion for new trial was set, by a minute order, for hearing on December 17, 1959, and counsel were notified thereof. On November 27, 1959, appellants' counsel secured an ex parte order which, among other things, directed the court reporter to prepare and deliver a complete transcript of the trial on or before January 7, 1960; continued the hearing of appellants' motion for a new trial to that date and also extended the time to serve and file affidavits in support of the motion.

No affidavit or proof of service of the petition filed in support of the order extending time is on file, although one of appellants' counsel, in opposition to respondent's motion to strike appellants' notice of intention to move for new trial, stated that both the foregoing petition and the order were served by mail on counsel on November 27, 1959. This is not an affidavit of mailing. There is, however, an affidavit of mailing a copy of the order extending time, dated November 27, 1959. There is not on file any affidavit or proof of service of the petition filed in support of the order extending time. Respondent's counsel represented, and the court found, that counsel did not receive the copy of the supporting petition at that time.

The question presented to the court was whether a notice of intention to move for a new trial which fails totally to designate in any language whether it will be made on affidavits, or the minutes of the court, or both, is sufficient to confer jurisdiction to hear such motion for a new trial; and, also, whether in the absence of such designation, knowledge imparted to opposing counsel that said motion would be primarily urged upon the insufficiency of the evidence, and would be made upon a reporter's transcript, can remedy such deficient notice of intention.     The power of the court to grant a new trial and the proceedings authorized to seek the exercise of such power, are strictly statutory; and the procedure for

seeking relief must conform strictly to the statutory mandate. (*Telefilm Inc.* v. *Superior Court,* 33 Cal.2d 289, 294 [201 P.2d 811]; Witkin, California Procedure, vol. 3, p. 2051.)

Code of Civil Procedure, section 659, provides that the moving party must file and serve a notice of his intention ''designating the grounds upon which the motion will be made and whether the same will be made upon affidavits or the minutes of the court or both.'' █ This language is mandatory and defective notice of intention cannot be amended after the expiration of the statutory time for its filing to add an additional ground, or grounds, for said motion, since such an order is beyond the jurisdiction of the court. (*Faeh* v. *Union Oil Co.,* 107 Cal.App.2d 163, 169 [236 P.2d 667]; *Sitkei* v. *Frimel,* 85 Cal.App.2d 335, 337 [192 P.2d 820]; *Strange* v. *Strange,* 23 Cal.App. 281, 282 [137 P. 1104].)

█ The trial court relied for its decision upon *Smith* v. *Ibos,* 22 Cal.App.2d 551 [71 P.2d 847], which, under strikingly similar facts, held that a court had no power to allow amendment of a notice of intention to move for new trial after the expiration of the statutory time limit. The holding in *Secreto* v. *Carlander,* 35 Cal.App.2d 361 [95 P.2d 476] is not in derogation of anything said in *Smith* v. *Ibos, supra,* since that case is expressly bottomed upon the proposition that where ''. . . a motion for a new trial is argued and submitted without any objection being made to defects in the notice of intention to move for a new trial, any irregularities therein are waived and may not be urged upon appeal.'' (*Secreto* v. *Carlander, supra,* at p. 364.) Here express objection was made to those very irregularities.

█ The trial court also properly denied appellants' motion under Code of Civil Procedure, section 473, since the granting of such motion would, in effect, have extended the time allowed by statute for giving notice of intention to move for new trial. This cannot be done. (*Sitkei* v. *Frimel, supra,* 337; *Faeh* v. *Union Oil Co., supra,* 169; *Smith* v. *Ibos, supra,* 554.)

Innumerable cases have been cited which are peripheral to the problem here involved, but none that are controlling.

The judgment and orders are affirmed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied June 19, 1961, and appellants' petition for a hearing by the Supreme Court was denied July 19, 1961.