[Civ. No. 22174.   First Dist., Div. Three.   Apr. 28, 1966.]

COMPONENTS FOR RESEARCH, INC., Plaintiff and Respondent, v. ISOLATION PRODUCTS, INCORPORATED, et al., Defendants and Appellants.

G. Joseph Bertain, Jr., Eugene W. Doyle, Maas & Little, Little & Evans and James B. Little for Defendants and Appellants.

Roger L. Mosher, McCloskey, Wilson, Mosher & Martin and William Irwin Cohen for Plaintiff and Respondent.

DRAPER, P. J.—Charged with misuse of plaintiff's trade secrets in a manufacturing process, defendant corporation and five individuals were enjoined from such use. Money damages also were awarded against them. All defendants appealed, but only the corporation and four individuals have filed briefs.

The court found that: Plaintiff corporation was organized in 1957, and began development of three basic lines of products for use in the electronics industry. Each involves use of metal conductors to transmit high electrical energy, using epoxy resin as an insulating material. The combination of like conductors and the same insulating material was known and had recognized value. But commercial production, by casting the metal conductor within the resin, presented substantial problems because of the differing expansion of the two materials under heat. Plaintiff spent an estimated $30,000 in experi-

mentation and trial and error to solve this problem, and developed a technique for manufacture at costs which made the products marketable. Defendant Joseph Bianco was a director of plaintiff from its incorporation until January 1962. From May 20, 1960, to May 1, 1961, he was its sales manager. He had a dispute with the corporation as to its sales program and resigned as sales manager May 1. His brother, Ernest, was a director and production manager of plaintiff from January 17, 1957. He resigned as production manager September 15, 1961, and as director in January 1963. Both Biancos, during their employment by plaintiff, participated in its experimental and development work, and became familiar with its production techniques, which were revealed only to employees. Upon termination of Joseph's employment as sales manager, although he remained a director of plaintiff, he began arrangements for the formation of defendant corporation as a competitor. He took with him drawings and customer lists of plaintiff. Ernest, after Joseph's departure but while he continued as plaintiff's production manager, supplied Joseph with shop drawings of plaintiff, and advised and assisted him in organizing the new venture. Although Ernest remained a director of plaintiff, from September 15, 1961, he devoted full time to the new venture. Defendant Ross became a consultant for plaintiff about May 1961, at the request of Joseph Bianco, although plaintiff had not authorized the employment. Ross' work had to do with testing of products. At about the same time, Joseph talked to Ross about assisting in formation of the competing business. Ross became a director and officer of defendant corporation in January 1962. Defendant Montali became an officer and director of defendant corporation about the same time. He loaned the corporation some $10,000, which was its only financing, at least until issue of its stock in May 1963. The corporation was incorporated October 31, 1961, and began operation that fall. In July 1962, plaintiff sent to each defendant a notice that defendant corporation's manufacture of these products involved use of trade secrets disclosed in confidence to the Biancos, and a demand that they cease use of these trade secrets and of plaintiff's customer lists. Defendants' operations continued without change.

Much of defendants' argument is based upon the misconception that the essence of the trade secrets was the design of the three products. ■ But it is clear that the developments made by plaintiff lay in the manufacturing process.

New techniques permitted mass production and commercially feasible manufacture. Some modifications of basic design probably accompanied development of the efficient manufacturing process, but that process was the substantial development originated by plaintiff.

This production technique clearly falls within the definition of a trade secret (4 Rest., Torts, § 757, com. b; *By-Buk Co.* v. *Printed Cellophane Tape Co.*, 163 Cal.App.2d 157, 166-167 [329 P.2d 147]). Unlike the decision upon which defendants largely rely (*Futurecraft Corp.* v. *Clary Corp.*, 205 Cal.App. 2d 279 [23 Cal.Rptr. 198]) this is a "know-how" case, and the manufacturing process, unlike the design involved in *Futurecraft*, is not revealed by plaintiff's products themselves.

There is evidence to support the findings that plaintiff kept its process secret in the sense of limiting disclosure to its employees and in making even those disclosures confidential. There was some evidence to the contrary, but this fact issue was for the trial court (*Ungar Electric Tools, Inc.* v. *Sid Ungar Co., Inc.*, 192 Cal.App.2d 398, 403 [13 Cal.Rptr. 268]).

The Biancos cannot claim the right to use plaintiff's secrets because they participated, as employees, in the development of the process, rather than learning an already-developed process when they entered that employ. (*Sequoia Vacuum Systems* v. *Stransky*, 229 Cal.App.2d 281 [40 Cal.Rptr. 203]; *Daniel Orifice Fitting Co.* v. *Whalen*, 198 Cal.App.2d 791, 797-799 [18 Cal.Rptr. 659].) Even in the absence of an express agreement against revelation of trade secrets, a director is under a fiduciary duty not to use or reveal them to the detriment of the corporation of which he is a director (*Sequoia Vacuum Systems* v. *Stransky, supra,* at p. 285-286). Both Biancos continued as directors of plaintiff long after they became directly associated in the operations of defendant corporation. Each took drawings and other materials from plaintiff for use by the new corporation. The evidence fully sustains the conclusion that they violated their fiduciary duty to plaintiff. This violation is the essence of the tort, as demonstrated by *Ungar, Sequoia* and *Daniel, supra* (see also *Ojala* v. *Bohlin,* 178 Cal.App.2d 292 [2 Cal.Rptr. 919]).

Appellants Montali and Ross were notified in July 1962 that the corporation of which they were directors was making unauthorized use of trade secrets improperly trans-

mitted to it by the Biancos, their fellow directors. They and the corporation nonetheless continued to use these manufacturing processes. Thus they, too, are liable (4 Rest., Torts, § 758[b]).

The claimed existence of a patent on one product design does not necessarily bar relief here granted (see 4 Rest., Torts, § 757, com. b). The patent of plaintiff upon which defendants rely relates to design, and the trade secrets in issue concern production methods and techniques. It follows that no asserted patent, if it exists, bars the relief here granted. Of course, state courts do not have jurisdiction of patent infringement claims, and the court here specifically refrained from adjudicating any patent rights.

As to products which are unpatented, defendants contend that state courts cannot invade the patent field by proscribing mere copying (*Sears, Roebuck & Co.* v. *Stiffel Co.*, 376 U.S. 225 [84 S.Ct. 784, 11 L.Ed.2d 661] ; *Compco Corp.* v. *Day-Brite Lighting, Inc.*, 376 U.S. 234 [84 S.Ct. 779, 11 L.Ed.2d 669] ). But these cases are readily distinguished from that at bench. The judgment here but affords protection against the use of plaintiff's trade secrets by those to whom they had been disclosed in confidence. Whether the idea was patented or not, plaintiff is entitled to such protection (*Saco-Lowell Shops* v. *Reynolds*, 141 F.2d 587, 598), and *Sears* and *Compco* do not modify this rule (*Servo Corporation of America* v. *General Electric Co.*, 337 F.2d 716, 724-725).

The award of $3,500 compensatory damages and $1,000 punitive damages is, contrary to defendants' view, sustained by the evidence.

The injunction, however, is too broad. It bars "producing or causing to be produced, sold or attempting to solicit the sale of any products, devices or instruments known and referred to as cable terminations, feed-through bushings, and isolation transformers, or any of them, which products, devices or instruments utilize epoxy resin as an insulation medium."

It is clear that the use of epoxy resin as insulation in such devices was not secret and was not developed by plaintiff. Rather, plaintiff developed the technique of commercial production of the three products utilizing this insulating medium. In its present form, the injunction goes beyond the evidence. Also, to the extent that the designs are unpatented, it probably invades the federal patent field by barring use of mere design

(*Sears, Roebuck & Co.* v. *Stiffel Co., supra,* 376 U.S. 225), unless so limited as to bar only the improper use of plaintiff's trade secrets.

The injunction need not specify in detail the processes whose use is prohibited (*Ungar Electric Tools, Inc.* v. *Sid Ungar Co., Inc., supra,* 192 Cal.App.2d 398, 404). We recognize, however, that problems may from time to time arise which may require modification or further specification. While jurisdiction to modify would seem inherent (*Sontag Chain Stores Co.* v. *Superior Court,* 18 Cal.2d 92, 94-96 [113 P.2d 689]), contrary language is found in some decisions (*id.*). We therefore deem it advisable to include in the judgment a specific reservation of jurisdiction to modify the injunction.

The judgment is modified by adding, after the words "epoxy resin as an insulating medium" in line 20 on page 60 of the clerk's transcript, the words "and the manufacture or production of which in any way uses, utilizes, or incorporates any method, technique or process of production developed by plaintiff;" and by adding, following the last word of paragraph 1 of the judgment, the following: "so manufactured. The methods of manufacture of such products heretofore used by defendant corporation are specifically found to have been developed in confidence by plaintiff, and their use is prohibited by this injunction. The court reserves jurisdiction to modify this injunction as the ends of justice may require."

As so modified, the judgment is affirmed. Three orders are also appealed from. Those appeals are dismissed. Respondent is awarded its costs on appeal.

Salsman, J., and Devine, J., concurred.