BOLT, BERANEK AND NEWMAN,
INC., Appellant,

v.

McDONNELL DOUGLAS
CORPORATION,
Appellee.

BOLT, BERANEK AND NEWMAN,
INC., Appellee,

v.

McDONNELL DOUGLAS
CORPORATION,
Appellant.

Nos. 74–1607, 74–1608.

United States Court of Appeals,
Eighth Circuit.

Submitted April 16, 1975.

Decided Aug. 15, 1975.

Certiorari Denied Jan. 19, 1976.
See 96 S.Ct. 855.

Robert H. Rines, Boston, Mass., for appellant.

Frederick M. Woodruff, St. Louis, Mo., for appellee.

Before JONES, Senior Circuit Judge,* and HEANEY and HENLEY, Circuit Judges.

* WARREN L. JONES, Senior Circuit Judge, Fifth Circuit, sitting by designation.

HEANEY, Circuit Judge.

Plaintiff acoustics consulting firm is assignee of a patent on a silencing device issued to Bill G. Watters in 1963 [the "Watters Patent"], which patent has never been commercially exploited. It brought this action against McDonnell Douglas Corporation, alleging that a silencing device being used in the latter's DC-10 jet engines infringes the Watters Patent. The District Court held that the Watters Patent was invalid for lack of invention, because it was "obvious" within the meaning of 35 U.S.C. § 103,[1] and that there was no infringement in any event, because the devices being used by McDonnell Douglas were not covered by the Watters Patent. We affirm the District Court's holding of invalidity, and express no opinion on the question of whether McDonnell Douglas's devices would be an infringement were the patent valid.

The Watters Patent is described as

\* \* \* sound-absorbing structures \* \* \* for lining ducts and similar passages for the purpose of absorbing and silencing the acoustic energy accompanying the flow of a fluid medium, such as air, through the ducts. In the form of the patent which is being litigated, a portion of the internal surface of a duct is replaced by a thin metal or plastic perforated sheet (facing), which is backed by acoustical cavities formed by a supporting honeycomb structure which holds the facing away from the wall of the duct. A cutaway view of the device gives the appearance of a metal or plastic sandwich.

The plaintiff alleges that structures used by McDonnell Douglas in its jet engines infringe the following claims of the patent:

1. A sound-absorbing panel for lining a portion only of a duct and the like having, in combination with the duct, a thin limp relatively flexible porous sheet having an impedance to acoustic energy that is appreciably resistive, a plurality of relatively rigid supporting members defining spaces therebetween and secured at one end to a surface of the duct and at the other end to the sheet, said duct having a fluid passage there-through adjacent said sheet with a cross-dimension normal to said sheet, the spaces of the supporting members being large compared to the pores of the sheet but small compared to the said cross-dimension, the said spaces being also sufficiently small to provide support for the relatively flexible sheet in order substantially to prevent its sagging and flexing.

2. The panel of claim 1, said supporting members having substantially equal height.

\* \* \* \* \* \*

11. The panel of claim 1, said supporting members being substantially acoustically opaque.

\* \* \* \* \* \*

13. The panel of claim 1, some of said supporting members being substantially acoustically opaque and some substantially acoustically transparent.

\* \* \* \* \* \*

16. The panel of claim 1, the portions of said sheet between successive supporting members having a plurality of said pores and said panel having a cover extending between said sheet and said duct surface.

17. A sound-absorbing structure having, in combination, a duct, and a plurality of sound-absorbing panels spaced apart to define a fluid passage

---

1. Section 103 provides:

   A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

therebetween with a cross-dimension between said panels, each of said panels comprising a thin limp relatively flexible porous sheet having an impedance to acoustic energy that is appreciably resistive, a plurality of relatively rigid supporting members defining spaces therebetween and secured at one end to a corresponding surface of the duct and at the other end to the sheet, the spaces of the supporting members being large compared to the pores of the sheet but small compared to said duct passage cross-dimension, said spaces being also sufficiently small to provide support for the relatively flexible sheet in order substantially to prevent its sagging and flexing.

\* \* \* \* \* \*

20. The structure of claim 17, said panels being substantially parallel.

■ The patent examiner considered ten United States Patents and seven Foreign Patents as prior art. The District Court found that there were several additional items of prior art which were not considered by the examiner, thus weakening the ordinary presumption of patent validity. *See Ralston Purina Co. v. General Foods Corp.*, 442 F.2d 389, 390 (8th Cir. 1971); *American Infra-Red Radiant Co. v. Lambert Industries, Inc.*, 360 F.2d 977, 989 (8th Cir.), *cert. denied,* 385 U.S. 920, 87 S.Ct. 233, 17 L.Ed.2d 144 (1966). Specifically, it found that claims 1, 2, 11, 16, 17 and 20 were anticipated by two articles in the September, 1951, issue of the Journal of the Acoustical Society of America—one article by Ingard and Pridmore-Brown, and the other article by Ingard and Bolt. It further found that claims 17 and 20 were anticipated in an article by Ira Dyer in the May 19, 1956, issue of Noise Control, that claim 1 was anticipated by Goldstein Patent '857,[2] and that claim 13 was anticipated by Kjaer Patent '685. After comparing the prior art to the patent in suit, the District Court found that the Watters Patent comprised "only an amalgam of known elements," and that "the combination of old elements is obvious to the hypothetical person skilled in the art."

■ The standard for our review of the District Court's finding of obviousness was set forth by the Supreme Court in *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966):

While the ultimate question of patent validity is one of law, \* \* \* the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art[3] resolved. Against this

---

2. The plaintiff urges that the patent examiner did consider the Goldstein Patent as prior art. We are satisfied that the record supports the District Court's contrary conclusion. Until the very end of the patent proceeding, the examiner repeatedly rejected Watters' application on the basis of Goldstein, and Watters repeatedly urged that Goldstein's application, filed on March 6, 1956, was not relevant as prior art because Watters had filed an affidavit swearing that he had completed his own invention and successfully tested it prior to March 6, 1956. The record at trial, including the plaintiff's answers to interrogatories supports the conclusions that the affidavit was false and that Watters did not conceive of his device until after March 6, 1956. Although the record is ambiguous on the patent examiner's reason for ultimately allowing the patent, despite Goldstein, it supports the District Court's conclusion that the examiner relied on the false affidavit.

3. The uncontradicted testimony by one of defendant's experts, brought out in cross-examination, was that

\* \* \* [i]n this particular art it has been demonstrated at the trial that the level of skill is quite a high level. It is a level of persons who have degrees and occasionally graduate degrees in engineering and usually related to this type of engineering. \* \* \*

Although the District Court made no explicit finding as to the level of ordinary skill in the pertinent art, the plaintiff does not deny that the level of ordinary skill is quite high.

background, the obviousness or nonobviousness of the subject matter is determined.   *   *   *

Applying this standard to the record before us, we find no clear error in the District Court's factual findings as to the scope of the prior art[4] and the comparison of that art with the Watters Patent. We are satisfied that the court's legal conclusion of obviousness was proper in light of those findings. Indeed, we find support for the conclusion of invalidity, not only in the items of prior art enumerated by the court, but also in various other publications and patents which were introduced at trial. The obviousness of the Watters Patent can perhaps be best demonstrated by discussing the various techniques which Watters combined to create his device.

First, the technique of using a perforated facing with an air cavity behind it, thus forming a "Helmholtz resonator," was well known in the prior art of acoustical silencing devices. Examples of its use are abundant, and include: Trader Patent '180, issued in 1925; a 1949 article in a French journal by Jacques Brillouin; the 1951 Ingard and Bolt article; the 1951 Ingard and Pridmore-Brown article; Kjaer Patent '685, issued in 1952; lectures given by Ingard and Bolt at General Electric in 1955; Watters and Baruch Patent '151, filed in 1955; Goldstein Patent '857, filed in 1956; and Baruch Patent '675, issued in 1956.

Second, the technique of rendering a thin perforated facing acoustically resistive by combining it with a nonperforated membrane such as "tea-bag" paper, and the technique of forming an air cavity Helmholtz resonator behind such a facing were known in the prior art. The Kjaer Patent taught the use of a facing combined of perforated and nonperforated elements, and both the Brillouin and the Ingard and Bolt articles suggested that such a facing could be constructed. In declaring that his preferred embodiment would use such a combined facing, Watters' original application openly stated that he was taking that construction from the previously filed application for Baruch Patent '675. The Baruch application had disclosed a facing comprised of two thin perforated plastic sheets sandwiching a layer of nonperforated tea-bag paper or cellulose film. Watters' application suggested that this facing be used, stating that it was the addition of the tea-bag paper or cellulose film which rendered the facing acoustically resistive.

Third, the technique of rendering a thin facing acoustically resistive without use of a nonperforated membrane, by selecting proper dimensions of thickness, porosity and pore size, was known in prior art. That is to say, it was already known that a thin perforated facing could itself be acoustically resistive if properly constructed.[5] Although, as stated above, Watters' preferred embodiment would involve the combined facing disclosed by Baruch '675, Watters de-

4. The plaintiff asserts that the only relevant prior art concerning the silencing of noise in ducts involved acoustically *transparent* heavy-gauge facings holding a cushion filling such as fibre glass, rock-wool or packed felt. As will be seen, however, the prior art dealing with the silencing of noise in rooms had not been limited to such techniques for at least thirty years. Several witnesses testified that fiber blankets or cushions could not be used in high velocity ducts because there would be "fuzz" all over the place. This was such an obvious fact that any person of ordinary skill in the art would look to the non-fibrous techniques which were being used in rooms. Accordingly, we are satisfied that the patent examiner and the District Court properly concluded that

the prior art directed to sound-absorption in rooms was within the scope of the relevant art.

5. At trial, plaintiff endeavored to show that the true breakthrough in the Watters Patent was the discovery that, in a high velocity environment, a facing which would be acoustically transparent in still air suddenly became acoustically resistive. Although the record shows that defendant's engineers expressed surprise at this phenomenon, it contradicts the plaintiff's assertion that Watters had discovered the phenomenon. Watters did not claim or even intimate before the Patent Office that moving air or the velocity thereof had any effect in determining the proper hole size necessary to

clared that, as an alternative, one could use a single perforated sheet which was acoustically resistive. The application instructed the reader that, if this alternative were to be chosen, the reader could copy the technique which was disclosed in the previously filed application for Watters and Baruch Patent '151. The Goldstein Patent also had disclosed this technique. Both the Goldstein Patent and Patent '151 showed the use of such a facing in front of air cavities which amounted to Helmholtz resonators.

Fourth, the technique of partitioning behind a facing to set up a series of Helmholtz resonators was well-known in the prior art, and the literature made it clear that the use of such partitions made the device far superior where the angle of incidence of the sound was not "normal" (i. e., perpendicular to the facing) and where high frequencies were involved. The technique was taught in the Kjaer and Goldstein patents, and had been discussed at great length in the Brillouin, Ingard and Bolt, and Ingard and Pridmore-Brown articles, as well as in the General Electric lectures. It has already been seen that Watters was tak-

ing facings which had previously been used to form Helmholtz resonators in ceilings and was simply placing those facings in a duct environment. In light of the fact that the incidence of sound traveling through a duct is primarily *not* perpendicular to the facing, it would have been extraordinary for him to have ignored the repeatedly published statements and mathematical formulae demonstrating that partitions behind the facing would make the resonator vastly superior. Watters' decision to place partitions behind already known facings was, without question, an obvious one.[6]

Fifth, the technique of locating the partitions so that the distance between partitions is smaller than the cross-dimension of the duct, yet larger than the cross-dimension of the pores in the facing, was in the prior art. The Kjaer and Goldstein patents disclose devices which have just such relationships between the stated dimensions. Furthermore, the Brillouin and Ingard and Pridmore-Brown articles discussed the proper sizing of the series resonators at great length and disclosed much of the mathematical theory underlying the selection of proper sizing.[7]

---

render the facing acoustically resistive. Instead, he used the identical formula for determining hole size as had been disclosed in Watters and Baruch Patent '151 for ceiling devices. Moreover, the text of Watters and Baruch Patent '151 warns the reader that

* * * If the openings are of the size ordinarily used in other types of sound-absorbing ceilings * * * such as openings on the order of $1/16$ of an inch in diameter, more or less, relatively closely spaced from one another, then the resistance presented to the incident sound energy in the audible frequency range is too low to be effective to dissipate sound energy through the action of the perforations alone. * * *

Had defendant's engineers consulted the Watters Patent and followed through on its reference to Watters and Baruch Patent '151, therefore, they would have been led away from, rather than toward, their discovery that holes $1/16$ of an inch or larger became suddenly acoustically resistive in high velocity wind settings.

**6.** As the District Court properly pointed out, the Watters "supporting members" are not

limited to honeycomb forms, but would encompass laterally spaced apart planar walls. Such planar walls were one obvious way to accomplish the partitioning which was known in prior art, and, indeed, were used in the Kjaer Patent. Even assuming, however, that the Watters Patent claimed the honeycomb structure as such, that structure was equally obvious and known in the prior art. The Goldstein Patent clearly discloses such a supporting structure, and the English translation of the Brillouin article, which was received into evidence without objection, uses the word "honeycomb" to describe a possible means of partitioning.

**7.** In the original application, Watters in effect conceded that the first four techniques discussed above were in the prior art and had been used in combination. He declared, however, that two problems remained: the flexing of the facing and the persistence of high frequency resonance. He then stated: "These problems underlying the present invention have been completely overcome with a particular critical kind of *dimensioning* of the spaces

■ From the foregoing, it is readily apparent that claims 1, 2, 11 and 16 of the Watters Patent were, as the District Court held, "only an amalgam of known elements." Moreover, the Goldstein Patent had combined all of the elements in virtually the same manner as set forth in those claims. We agree with the court's conclusion that it would have been obvious for a person of ordinary skill in the art to attempt to place Watters' minor variation of Goldstein's device in a duct.

Three claims remain to be disposed of. Claim 17 is a restatement of claim 1, with the provision that there should be more than one of such panels placed in the duct, and claim 20 states that the panels should be parallel. The court properly concluded that the technique of lining more than one surface in a duct or room is an obvious one, and that the technique of erecting the panels in parallel formation is also obvious. Dr. Bolt testified by deposition that he had seen ducts where all four walls were lined, and the Dyer article disclosed ducts lined on four sides and on opposite, parallel walls.

Finally, claim 13 states that some of the supporting members can be substantially acoustically opaque and some substantially acoustically transparent. The patent indicates that this may be done by perforating some of the partitions, and that the purpose of such perforation is to "tune" the device so that it is capable of absorbing a broader band of frequencies. We are satisfied that, although this technique was not specifically taught or disclosed in any of the publications before the court, the method was one which would be obvious to a person of ordinary skill in the art. It was well known that, in order to deal with a broad band of frequencies, the honeycombing or other partitioning could be constructed so that different sized chambers in the supporting mechanism resulted. The Brillouin, Ingard and Bolt, and Ingard and Pridmore-Brown articles discussed this concept of "tun-

ing." Given the honeycombing structure which was already known to the art, there would be two obvious alternative ways to enlarge some, but not all, of the air cavities or series resonators: to move some of the partitions so that different sized chambers were constructed from the outset, or to connect some of the chambers by means of slits or perforations. The Watters Patent application implicitly recognized the obviousness of the latter approach:

> If it is desired to introduce particular frequency resonance phenomena, *of course,* the acoustically opague [sic] supporting members * * * may, in some areas, be rendered substantially transparent. * * * (Emphasis supplied.)

In sum, we affirm the District Court's conclusion that none of the allegedly infringed claims met the statutory requirement of non-obviousness. The oft-quoted statement of Justice Clark in *Graham v. John Deere Co., supra* at 19, 86 S.Ct. at 694, is once more to the point:

> * * * We have been urged to find in § 103 a relaxed standard, supposedly a congressional reaction to the "increased standard" applied by this Court in its decisions over the last 20 or 30 years. The standard has remained invariable in this Court. Technology, however, has advanced—and with remarkable rapidity in the last 50 years. Moreover, the ambit of applicable art in given fields of science has widened by disciplines unheard of a half century ago. It is but an even-handed application to require that those persons granted the benefit of a patent monopoly be charged with an awareness of these changed conditions. * * * He who seeks to build a better mousetrap today has a long path to tread before reaching the Patent Office.

Since we affirm the court's finding of invalidity of the Watters Patent, we need not rule on the question of whether

between supporting members * * *." (Emphasis supplied.) The supposedly "critical di-

mensions" had been used by both Kjaer and Goldstein.

or not the defendant's structures are such that they would have infringed on that patent, had it been valid, and we express no opinion on that issue.

 The defendant cross-appeals from the District Court's denial [8] of an award of attorney fees before that court under 35 U.S.C. § 285. The determination of whether or not an action is an "exceptional case" within the meaning of § 285 is a matter for the sound discretion of the trial court. *See Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc.,* 484 F.2d 905, 909 (7th Cir. 1973); *Q–Panel Co. v. Newfield,* 482 F.2d 210, 211 (10th Cir. 1973). The defendant urges that that discretion was abused because the trial court made no ruling on the issue of fraud. Mere failure to rule on that issue, standing alone, however, is not objectionable for

> * * * [t]he trial court need not make specific findings on all facts and evidentiary matters brought before it, but need find only the ultimate facts necessary to reach a decision in the case. * * *

*United States v. F. D. Rich Co., Inc.,* 439 F.2d 895, 899 (8th Cir. 1971). The trial court had sustained the defense of obviousness, and the alleged fraud was simply an alternative defense. As was the case in *Indiana General Corp. v. Krystinel Corp.,* 421 F.2d 1023, 1033–1034 (2nd Cir.), *cert. denied,* 398 U.S. 928, 90 S.Ct. 1820, 26 L.Ed.2d 91 (1970), we cannot say that the court abused its discretion in withholding a ruling on the fraud issue and in denying attorney fees.

The judgment of the District Court is affirmed.

8. We find no merit to the defendant's implication that the trial court made no ruling on its request for attorney fees. The request was made and was not granted, despite the court's award of costs. Under the circumstances, the denial of the award was clear.