**SSP AGRICULTURAL EQUIPMENT, INC., a California Corporation, Plaintiff-Appellant,**

v.

**ORCHARD–RITE LTD., a Washington Corporation, Defendant-Appellee.**

**SSP AGRICULTURAL EQUIPMENT, INC., a California Corporation, Plaintiff-Appellee,**

v.

**ORCHARD–RITE LTD., a Washington Corporation, Defendant-Appellant.**

**Nos. 76–3406, 76–3389.**

United States Court of Appeals, Ninth Circuit.

March 12, 1979.

---

Richard C. Smith (argued), Yakima, Wash., for plaintiff-appellant.

Harlin P. Huebner (argued), of Huebner & Worrel, Los Angeles, Cal., for defendant-appellee.

Before VAN DUSEN,* WRIGHT and GOODWIN, Circuit Judges.

VAN DUSEN, Circuit Judge.

The plaintiff, SSP Agricultural Equipment, Inc. (herein SSP), formerly National

---

* Senior Circuit Judge for the Third Circuit, sitting by designation.

Frost Protection Company, Inc. (herein National Frost), and the defendant, Orchard-Rite Ltd. (herein Orchard-Rite), manufacture and sell wind machines utilized by farmers to circulate air through orchards and other crops to prevent frost from settling and injuring or destroying the crops. The propeller fan assembly of SSP's wind machine is the subject matter of United States Patent No. 2,985,245, presently owned by SSP. The patent was issued May 23, 1961, to National Frost as assignee of the inventor, Ralph P. Maloof. SSP markets its wind machine under the name, "TROPIC BREEZE," a trademark registered under United States Trademark Registration No. 788,738 issued to National Frost April 27, 1965. SSP filed this action for injunctive relief and damages on April 9, 1974, charging Orchard-Rite with infringement of its patent and trademark and unfair competition.

Orchard-Rite denied SSP's allegations of patent and trademark infringement and, in an amended answer to the complaint, included a counterclaim seeking judgment declaring SSP's patent invalid and unenforceable for lack of infringement, as well as an award for costs and attorney fees. Orchard-Rite attempted to amend its answer a second time, on the eve of the commencement of the trial on the infringement issues, to add a counterclaim for the recovery of costs and attorney fees under the Sherman Act and the doctrine of patent misuse. The district court denied the motion as untimely made.

After the trial on the patent and trademark infringement issues and the filing of findings of fact and conclusions of law, the district court entered a judgment in favor of Orchard-Rite.[1] The district court concluded that the Maloof propeller fan assembly claimed in SSP's patent lacks invention or is obvious and, thus, invalid and that SSP's registered trademark, "TROPIC BREEZE," was not infringed by Orchard-Rite.

Orchard-Rite filed a post-trial motion for an award of attorney fees under the authority of 35 U.S.C. § 285. The motion was denied.

SSP appeals from the district court's adverse rulings of patent invalidity because of obviousness and patent and trademark non-infringement. Orchard-Rite cross-appeals from the district court's refusal to allow an amendment to the pretrial order and the pleadings to permit a cross-claim against SSP for violation of the Sherman Act, its failure to grant Orchard-Rite's motion for attorney fees under 35 U.S.C. § 285 and its refusal to make findings of fact and conclusions of law as to Orchard-Rite's allegations of patent invalidity under the prior use and sale provisions of 35 U.S.C. § 102(b) and because of the inventor's misrepresentations to the Patent Office.

## I. THE MALOOF PATENT

Wind machines used in agriculture consist of two or more blades radiating from and joined to a hub, the hub being mounted on the driving shaft of an engine. The purpose of the Maloof invention was to construct a hub-to-blade structure sufficiently strong and flexible to accommodate fan blades which were longer and more economical to fabricate than the aircraft propeller blades previously commonly used in wind machines. It was contemplated,

1. The trial judge, Judge William N. Goodwin, died before the completion of the proceedings in the district court. Judge Goodwin wrote a memorandum opinion dated December 3, 1974, and a supplemental memorandum opinion dated December 10, 1974, both filed December 12, 1974, on the question of patent validity and a memorandum opinion dated May 30, 1975, filed June 2, 1975, on the issue of trademark infringement. On October 20, 1975, Judge Goodwin held a hearing on proposed findings of fact and conclusions of law. Subsequently, on July 19, 1976, after the death of Judge Goodwin, the parties agreed to the entry of findings and conclusions by Judge Neill. They were accordingly entered August 18, 1976, followed by entry of a judgment by Judge Neill on that date which concluded with these sentences:

"8.
"That the whole of Plaintiff's Complaint is hereby dismissed with prejudice.
"9.
"That Defendant shall have and recover its costs and disbursements herein incurred."

but not stated in the patent, that the long, thin blades of the invention would move a larger mass of air for a greater distance at fewer revolutions of the engine per minute than was possible with the use of aircraft propeller blades.

The problem to which the invention is primarily directed is stated in the patent as follows:

"The geometric arrangement giving the best aerodynamic efficiency is one that becomes well suited to a slender, thin, smooth, moderately twisted metal extrusion, except for the structural properties required of the region where the propeller fan blade joins the hub. In this connecting zone, large moments may appear which produce bending stress that actually exceed the tension stresses caused by centrifugal force. It becomes necessary then to provide a mechanism which would make use of centrifugal force to. overcome or relieve the bending moment. The connection between the hub and each blade forms a continuous, elastic, deflectable joint."

The patent claims include the following elements, combined in the manner described: a hub composed of two annular or circular plates; a pair of tangs or arms extending outward from the center of the hub in a direction perpendicular to its axis, 180° from each other, each tang having a thick portion bolted between the annular plates of the hub and a longer, outwardly extending reduced thickness portion (being five to ten times wider than thick) shaped to make a 17° angle with a plane at right angles to the axis of the hub; a pair of long, slender blades made of extruded aluminum of uniform cross section located at the outer ends of the tangs; four splice plates, one placed on either side of the blades and tangs in the area where the blades and tangs meet, each pair of splice plates being spaced somewhat from the hub

and bolted or by some means fastened together securing the tangs and blades between them in double shear.

The hub actually used in SSP's and Orchard-Rite's wind machines differs from the one described in the three claims of the patent. The annular plates are discarded, with the result that the thick portion of the tangs forms the hub. Orchard-Rite argued in the district court that its product did not infringe the patent, since even if the Orchard-Rite hub structure is the substantial equivalent of the one claimed in the patent, its particular features were rejected by the patent examiner and disclaimed by Maloof in order to obtain the patent. The district court, however, found that the hub is not a part of the invention claimed in the patent and Orchard-Rite does not press its argument based on file wrapper estoppel on appeal. We, therefore, turn to the question raised by SSP: whether the district court erred in determining that the Maloof patent claims invention in subject matter which would have been obvious to persons of ordinary skill in the art of fabricating wind machines.

## II. OBVIOUSNESS

Nonobviousness of the subject matter as defined in 35 U.S.C. § 103 [2] is one of three conditions of patentability. *Graham v. John Deere Co.*, 383 U.S. 1, 12, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); *Penn Intern. Industries v. Pennington Corp.*, 583 F.2d 1078, 1080 (9th Cir. 1978); *Jeddeloh Brothers Sweed Mills, Inc. v. Coe Manufacturing Co.*, 375 F.2d 85, 87 (9th Cir. 1967). While the ultimate question of patentability is one of law, it is resolved with respect to obviousness on the basis of factual determinations of (1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, and (3) the level of ordinary skill in the pertinent art. *Graham*

---

**2.** 35 U.S.C. § 103 provides:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that

the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

v. *John Deere Co., supra,* 383 U.S. at 17, 86 S.Ct. 684; *Penn Intern. Industries v. Pennington Corp., supra* at 1080–81; *Jeddeloh Brothers Sweed Mills, Inc. v. Coe Manufacturing Co., supra* at 88.

■ The district court found that the prior art with respect to the Maloof device, consisting of the six patents and the publication, the *Mechanical Engineers' Handbook* by L. S. Marks (2d ed. 1925), considered by the examiner during the course of the prosecution of the patent application in the Patent Office, discloses the elements of the Maloof propeller fan assembly and, to the extent they are not disclosed, that the differences are obvious and unpatentable.[3] We agree that the references cited by the patent examiner constitute prior art with respect to the Maloof assembly. All six of the patents claim propeller fan assemblies. Although at least four of them appear not to contemplate the use of blades as long as the length of the blades in SSP's wind machine, 17 feet 4 inches, that difference goes to the question of obviousness. Moreover, the Maloof patent does not specify the size of the blades claimed and characterizes them only as "large," "slender" or "elongated."

We agree also with the district court that the elements of the Maloof invention are anticipated by the prior art or are obvious in the light of it. The use of aluminum blades longer and thinner than those priorly employed is disclosed in the Reed patent for an aeronautical propeller, United States Patent No. 1,463,556. The Reed patent teaches that such blades may be integral with each other or separate and appropriately joined to the hub.

The Place patent, United States Patent No. 2,395,193, discloses the type of splice plate connection joining the blades of a fan to an extension of the hub which Maloof uses and also discloses that the required pitch angle to the blades may be effected commencing at the hub.

The Upson patent, United States Patent No. 2,317,502, discloses the blades in a fan assembly with a hub connection secured by means of pairs of spider arms comparable to the pairs of splice plates of the Maloof patent. The arms are twisted just beyond a hub disc to impart the pitch angle to the blades. The use of a double shear joint is also disclosed in Marks' *Mechanical Engineers' Handbook.* The Beier United States Patent No. 2,492,029 also discloses the elements which appear in the Maloof assembly.

SSP contends that patentable invention lies in the Maloof combination "in the use of a hub and a pair of tangs with respect to the axial line of a motor shaft" and urges invention more specifically in the 17° deflection of the tangs. The district court found that where the formation and use of the Maloof tangs differs from that disclosed in the prior art, the difference is obvious. We agree that the Maloof variation would be obvious to a mechanic having ordinary skill in the fabrication of propeller fan assemblies for wind machines. The value and manner of deflection close to the hub of an element joined to the blades is taught in the Upson, Place and Beier patents and the Maloof variation does not apply any new principle. *See Jeddeloh Brothers Sweed Mills, Inc. v. Coe Manufacturing Co., supra* at 92.

SSP urges that the use of bolted splice plates to attach the blades of the Maloof device to the tangs to form a connection having flexibility and strength is a patentable difference from the prior art. We agree

---

3. Since all of the prior art considered by the district court was also before the patent examiner who ultimately accepted the Maloof claims as patentable, the Maloof patent is entitled to the presumption of validity which attaches to patents. 35 U.S.C. § 282; *see Jacuzzi Bros., Inc. v. Berkeley Pump Co.,* 191 F.2d 632 (9th Cir. 1951). However, the presumption is not conclusive. *Westinghouse Elec. & Mfg. Co. v. Formica Insulation Co.,* 266 U.S. 342, 348, 45 S.Ct. 117, 69 L.Ed. 316 (1924); *Mayview Corp. v. Rodstein,* 480 F.2d 714, 718 (9th Cir. 1973). Moreover, the courts are cautioned to subject combination patents such as Maloof's to particular scrutiny for validity. *Great A. & P. Tea Co. v. Supermarket Equip. Corp.,* 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162 (1950); *see Futorian Mfg. Corp. v. Dual Mfg. & Engineering,* 528 F.2d 941, 943 (1st Cir. 1976).

with the district court that it is not. The parts of the combination claimed in the Maloof patent are disclosed in the prior art or are obvious. The functions they perform individually and together also are anticipated by the prior art and no significant new result is achieved. The use of splice plates in double shear for strength is anticipated in Upson. A connection composed of separate parts is obviously more flexible than a solid unit. and that principle is disclosed in the fan assemblies in the prior art to the extent that the Maloof combination is an obvious application of the disclosures.

We think that the district court did not err in determining that the features in the Maloof fan assembly which differ from the disclosures of the prior art involve differences of size, proportion and arrangement accomplishing an improvement which is obvious and not patentable. *See Sakraida v. Ag Pro, Inc.,* 425 U.S. 273, 282, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976); *Jeddeloh Brothers Sweed Mills, Inc. v. Coe Manufacturing Co., supra* at 91–92. Mechanical patents covering a combination of old elements must be scrutinized with care, since it is unlikely that such combinations will amount to patentable invention. *Sakraida v. Ag Pro, Inc., supra,* 425 U.S. at 281, 96 S.Ct. 1532; *Great A. & P. Tea Co. v. Supermarket Equip. Corp., supra,* 340 U.S. at 152, 71 S.Ct. 127; *Penn Intern. Industries v. Pennington Corp., supra* at 1081; *Jeddeloh Brothers Sweed Mills, Inc. v. Coe Manufacturing Co., supra* at 88. A mechanical combination must utilize a new principle or achieve a new result to cause it to rise to the status of invention. *Sakraida v. Ag Pro, Inc., supra* at 282; *Great A. & P. Tea Co. v. Supermarket Equip. Corp., supra,* 340 U.S. at 152–53, 71 S.Ct. 127; *Penn Intern. Industries v. Pennington Corp., supra* at 1081; *Astro Music, Inc. v. Eastham,* 564 F.2d 1236, 1238 (9th Cir. 1977); *Jeddeloh Brothers Sweed Mills, Inc. v. Coe Manufacturing Co., supra* at 92. Since the Maloof device neither applies a new principle nor achieves an unusual new result, it is not patentable and the district court, having properly applied the law and having supported its decision with findings which are not clearly erroneous, did not err in making that determination. The device being unpatentable, the patent covering it is invalid and unenforceable.

SSP's success in selling its wind machines utilizing the Maloof fan assembly and evidence of the existence of a long-felt need for the product are secondary factors which we do not consider, since the issue of obviousness is not in doubt. *Farr Company v. American Air Filter Company,* 318 F.2d 500, 504 (9th Cir. 1963); *see Great A. & P. Tea Co. v. Supermarket Equip. Corp., supra,* 340 U.S. at 153, 71 S.Ct. 127; *Penn Intern. Industries v. Pennington Corp., supra* at 1081; *Jeddeloh Brothers Sweed Mills, Inc. v. Coe Manufacturing Co., supra* at 92.

## III. ATTORNEY FEES

Orchard-Rite contends that the evidence before the district court establishes that the Maloof invention was "on sale" and "described in a printed publication" in this country, within the meaning of 35 U.S.C. § 102(b), more than one year before Maloof filed an application for a patent in the Patent Office. In addition, Orchard-Rite contends that whereas Maloof asserts in the specifications of his patent that he has devised a hub-to-blade connection which is flexible as well as strong, the evidence proves that, in reality, the connection was rigid.

Orchard-Rite argues that Maloof, SSP and SSP's predecessor in interest, National Frost, had knowledge of these facts which were misrepresented in the Patent Office, had knowledge that the patent which was issued was invalid under § 102(b), and, as a result of its ownership of an invalid and fraudulently procured patent, SSP has derived profit, excluded competition and has forced Orchard-Rite into expensive litigation.

Orchard-Rite argues that the case is, therefore, an exceptional one, justifying the

payment of attorney fees to Orchard-Rite under 35 U.S.C. § 285.[4]

Attorney fees may be awarded to the successful party in patent infringement litigation "in exceptional cases." 35 U.S.C. § 285. An award of such fees is within the discretion of the trial court and may not be overruled except for abuse of discretion or erroneous application of the law. *Maurice A. Garbell, Inc. v. Boeing Co.,* 546 F.2d 297, 300 (9th Cir. 1976), *cert. denied,* 431 U.S. 955, 97 S.Ct. 2677, 53 L.Ed.2d 272 (1977); *Bolt, Beranek & Newman, Inc. v. McDonnell Douglas Corp.,* 521 F.2d 338, 344 (8th Cir. 1975), *cert. denied,* 423 U.S. 1073, 96 S.Ct. 855, 47 L.Ed.2d 82 (1976); *Super Mold Corporation v. Clapp's Equipment Division, Inc.,* 397 F.2d 932, 935 (9th Cir. 1968).

Bad faith, fraud or other significant misconduct "which would make it grossly unjust for the prevailing party to be left with the burden of his litigation expenses" is required to make a case "exceptional," justifying an award of fees under § 285. *Maurice A. Garbell, Inc. v. Boeing Co., supra* at 300; *see Penn Intern. Industries v. Pennington Corp.,* 583 F.2d 1078, 1083 n. 5 (9th Cir. 1978); *Locklin v. Day-Glo Color Corp.,* 468 F.2d 1359, 1361 (9th Cir. 1972); *Super Mold Corporation v. Clapp's Equipment Division, Inc., supra* at 935; *Park-In Theatres v. Perkins,* 190 F.2d 137, 142 (9th Cir. 1951); *Deller's Walker on Patents* § 760 (2d ed. 1973).

■ The district court denied attorney's fees without having made requested findings on the question of whether there were sales of wind machines embodying the Maloof invention and advertising describing the device in existence more than one year before the date Maloof's application for a patent was filed. We think the district court did not abuse its discretion in denying attorney fees to Orchard-Rite without having made the requested findings. *See Bolt, Beranek & Newman, Inc. v. McDonnell Douglas Corp., supra* at 344. Assuming that a finding could have been made that

there were prior sales and publications invalidating the patent under 35 U.S.C. § 102(b), that fact, coupled with the fact of Maloof's sworn statements in the Patent Office, would not amount to the bad faith necessary to make a case "exceptional" under § 285. "Proof of a patent's invalidity does not necessarily establish bad faith on the part of the patentee who has charged infringement of his patent." *Super Mold Corporation v. Clapp's Equipment Division, Inc., supra* at 935.

There is no evidence in the record from which a finding could be made that Maloof or National Frost deliberately and consciously withheld facts or misrepresented them in the Patent Office. Without such culpable conduct an "exceptional" case is not presented. *See Digitronics Corp. v. New York Racing Ass'n, Inc.,* 553 F.2d 740, 749 (2d Cir. 1977); *Super Mold Corporation v. Clapp's Equipment Division, Inc., supra.* The absence of any evidence of bad faith on the part of the patentee in this case distinguishes it from the cases cited by Orchard-Rite. Accordingly, we hold that the district court did not abuse its discretion in denying Orchard-Rite's § 285 motion.

## IV. TRADEMARK INFRINGEMENT

■ SSP's charge of trademark infringement by Orchard-Rite is based upon a specification sheet which Orchard-Rite circulated at a trade fair in November 1973. Under two parallel columns of the sheet, one captioned "TROPIC BREEZE" and the other captioned "ORCHARD–RITE," various characteristics of the engine, gear box, blades, etc., of the SSP and Orchard-Rite wind machines are stated. At the bottom of the sheet SSP's registered trademark, "TROPIC BREEZE" is again used. Twenty-four copies of the specification sheet were prepared by Orchard-Rite and eight were distributed to potential customers and to representatives of SSP. SSP contends that the district court erred in failing to

---

4. 35 U.S.C. § 285 provides:

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."

find a violation of § 32 of the Lanham Act, 15 U.S.C. § 1114(1),[5] in Orchard-Rite's use of SSP's trademark.

The use of a competitor's trademark for purposes of comparative advertising is not trademark infringement "so long as it does not contain misrepresentations or create a reasonable likelihood that purchasers will be confused as to the source, identity, or sponsorship of the advertiser's product." *Smith v. Chanel, Inc.,* 402 F.2d 562, 563 (9th Cir. 1968); *accord, Saxony Products, Inc. v. Guerlain, Inc.,* 513 F.2d 716, 722 (9th Cir. 1975).

The district court found that sellers of wind machines were well known to potential purchasers in the area where Orchard-Rite's advertisement was distributed and there was no likelihood that they would be confused as to the source or identity of Orchard-Rite's product. The finding, which is supported by substantial evidence, is not clearly erroneous.

SSP contends on appeal that Orchard-Rite's specification sheet contains inaccurate information about SSP's wind machine. This contention was, apparently, not addressed to the district court nor have we discovered in the record any objection to the district court's findings that the specification sheet contained no false or inaccurate statements (Finding No. 33, Findings of Fact and Conclusions of Law filed August 18, 1976). We, therefore, do not consider this argument. *See Singleton v. Wulff,* 428 U.S. 106, 120–21, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Sears v. Southern Pacific Company,* 313 F.2d 498, 505 (9th Cir. 1963).[6]

## V. AMENDMENT OF THE PLEADINGS

■ Orchard-Rite contends that the district court erred in not allowing Orchard-Rite to amend the pre-trial order and the pleadings to permit a counterclaim against SSP for the use of a patent in violation of the Sherman Act. Orchard-Rite's motion was made on the day before the trial was scheduled to begin. In view of this circumstance, the district court's denial of the motion as untimely made was not an abuse of discretion. *See Dunn v. Koehring Co.,* 546 F.2d 1193, 1198–99 (5th Cir. 1977); *Rojas v. State Farm Mutual Automobile Ins. Co.,* 518 F.2d 85, 88 (9th Cir. 1975); *Rogers v. Valentine,* 426 F.2d 1361, 1362–63 (2d Cir. 1970); *Gorsuch v. Provident Security Life Insurance Company,* 392 F.2d 200 (9th Cir. 1968) (per curiam); *Caddy-Imler Creations, Inc. v. Caddy,* 299 F.2d 79, 84 (9th Cir. 1962).

Moreover, knowing and willful patent fraud is required to establish a violation of

---

**5.** 15 U.S.C. § 1114(1) provides:

"(1) Any person who shall, without the consent of the registrant—

"(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

"(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) of this section, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive."

**6.** We note that § 43(a) of the Lanham Act (15 U.S.C.A. § 1125(a)) cannot form a basis for relief in this case since it applies only to "false descriptions or representations" of the defendant's "goods or services" which he is attempting to compare favorably with the product of the owner of a trademark (SSP). *Fur Information & Fash. Coun., Inc. v. E. F. Timme & Son, Inc.,* 501 F.2d 1048, 1051–52 (2d Cir.), *cert. denied,* 419 U.S. 1022, 95 S.Ct. 498, 42 L.Ed.2d 296 (1974); *Bernard Food Industries, Inc. v. Dietene Company,* 415 F.2d 1279, 1284 (7th Cir. 1969), *cert. denied,* 397 U.S. 912, 90 S.Ct. 911, 25 L.Ed.2d 92 (1970). SSP does not contend that the specification sheet contains false information about the Orchard-Rite wind machine.

§ 2 of the Sherman Act based on the use of an invalid patent to monopolize or attempt to monopolize a segment of the market. *Walker, Inc. v. Food Machinery,* 382 U.S. 172, 177, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965); *Cataphote Corporation v. DeSoto Chemical Coatings, Inc.,* 450 F.2d 769, 772 (9th Cir. 1971), *cert. denied,* 408 U.S. 929, 92 S.Ct. 2497, 33 L.Ed.2d 341 (1972). Assuming the existence of the other necessary elements of a cause of action under § 2, there is no evidence of intentional fraud on the Patent Office in this case as was present in *Oetiker v. Jurid Werke, G.m.b.H.,* 181 U.S.App.D.C. 124, 556 F.2d 1 (1977), nor any contentions other than conclusory allegations of such fraud.

The judgment of the district court will be affirmed in all respects.