**Sven TVETER, an individual, doing business as SGT Enterprises, Defendant–Appellant,**

v.

**AB TURN–O–MATIC, a Swedish corporation, and Scandus, Inc., a California Corporation, Plaintiffs–Appellees.**

No. 77–2299.

United States Court of Appeals,

Ninth Circuit.

Dec. 4, 1980.

Jack M. Wiseman, San Jose, Cal., argued, for defendant–appellant.

George C. Limbach, Limbach, Limbach & Sutton, William Rochester, San Francisco, Cal., for plaintiffs–appellees.

Before BROWNING, Chief Judge, WALLACE, Circuit Judge, and CURTIS,* District Judge.

BROWNING, Chief Judge:

Appellant Tveter produces and distributes "Take–A–Turn," a device for dispensing numbered tickets to persons awaiting service. Appellee AB Turn–O–Matic produces "Turn–O–Matic," a similar device performing the same function. The "Turn–O–Matic" device is distributed in the United States by appellee Scandus, Inc. It was first on the market. The district court held that appellant had infringed appellees' patent and trademark rights, and that appellant had unfairly competed with appellees by simulating the appearance of the "Turn–O–Matic" and "palming off" appellant's goods as those of appellees.

We reverse in part and affirm in part, concluding that the "Turn–O–Matic" device is unpatentable for obviousness, but that appellant violated appellees' trademark rights and engaged in unfair competition in the marketing of "Take–A–Turn."

I

Appellees' "Turn–O–Matic" is a commercial embodiment of Ehrlund U.S. Patent No. 3,885,724, issued May 27, 1975, for a "Device for Tearing Off Pieces of a Certain Length from a Strip." Appellant contends the Ehrlund patent was invalid under 35 U.S.C. § 103, which does not permit a patent to be issued

if the differences between the subject matter sought to be patented and the

prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

The district court made findings on the factual issues identified in *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966), as relevant to the determination of obviousness under section 103: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; and (3) the level of ordinary skill in the pertinent art.

The district court concluded that the device disclosed by the Ehrlund patent would not have been obvious to one skilled in the art and was therefore patentable—a conclusion of law. *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 280, 96 S.Ct. 1532, 1536, 47 L.Ed.2d 784 (1976).

In defending the court's findings and conclusion, appellees argue that because of the statutory presumption of validity, 35 U.S.C. § 282, appellant bore "the heavy burden of persuasion by 'clear and convincing' proof of the alleged obviousness of the patented invention."

The presumption of non–obviousness over the prior art rests upon the assumption that the patent examiner compared the claims with the prior art. The examiner did not have before him Ingram No. 1,704,-044, Burr & Davis No. 843,579, Osborn Nos. 3,173,601 and 3,229,876, Williams No. 3,098,-594, Beloud No. 2,361,528, Kingsbury No. 1,983,463, and Suk No. 1,575,081. As indicated below, these prior patents contain disclosures closer to Ehrlund's device than those found in the patents considered by the examiner.[1] This circumstance dissipated the presumption of validity. The burden of proof with respect to non–obviousness remained with appellees as claimants under the patent. *Photo Electronics Corp. v. England*, 581 F.2d 772, 775 (9th Cir. 1978); *Deere & Co. v. Sperry Rand Corp.*, 513 F.2d

* Honorable Jesse W. Curtis, Senior Judge, United States District Court for the Central District of California, sitting by designation.

1. See note 6, *infra*.

1131, 1132 (9th Cir. 1975); *Hewlett Packard Co. v. Tel–Design Inc.*, 460 F.2d 625, 628 (9th Cir. 1972).

The district court's findings as to the content of the prior art are not in question. The court treated all of the prior patents relied upon by appellant as pertinent prior art.

The district court's findings as to the differences between the prior art and the patented device consist primarily of listings of one or more respects in which a particular device disclosed in a particular prior art patent, separately considered, differed from the device disclosed in the Ehrlund patent. The differences are largely semantic–often relating more to the label attached to a particular element than to its function.[2] In any event, the fact that each prior patented device differed in one or more respects from the Ehrlund device establishes only that the latter was not "identically disclosed or described" in previous patents, thus satisfying section 102 of Title 35. This is not enough to satisfy the requirement of section 103 that a patentable device disclose a non–obvious advance over the whole of the pertinent prior art.

Nor is the non–obviousness requirement satisfied simply because the article sought to be patented differs from the pertinent prior art taken as a whole. "[T]he mere existence of differences between the prior art and an invention does not establish the invention's nonobviousness. The gap between the prior art and [the invention must be sufficiently] great as to render the system nonobvious to one reasonably skilled in the art." *Dann v. Johnston*, 425 U.S. 219, 230, 96 S.Ct. 1393, 1399, 47 L.Ed.2d 692 (1976).

The district court found that the "skill of the average man in this art includes mechanical knowledge, knowledge of materials, and properties of materials, a mechanical ability to see how things fit together, *and probably* exposure to earlier model dispensers." (Emphasis added). The emphasized phrase suggests a misapprehen- sion of the law. There can be no doubt that the test for patentable invention is whether the innovation would have been obvious to a person of ordinary skill charged with complete knowledge of all pertinent prior developments, however much universal knowledge might exceed the knowledge actually possessed by the ordinary workman in the art. *Walker v. General Motors Corp.*, 362 F.2d 56, 60 n.3 (9th Cir. 1966). Since such compendious knowledge is at best unlikely, in the usual case the inquiry must be hypothetical.

The district court's findings recite testimony by the alleged inventor and by two experts that the patented device would not have been obvious either to them or to a person of average skill in the art even had they known of the prior art cited by appellant. Such testimony is of little value. "Obviousness" is not a simple factual conclusion drawn from the subsidiary findings of fact as a matter of ineluctable logic. "Obviousness" is a question of law, *Sakraida v. Ag Pro, Inc., supra,* 425 U.S. at 280, 96 S.Ct. at 1536, a legal concept embodying the constitutional standard of invention.

An innovation is not necessarily patentable because it results in greater convenience and utility. To be patentable, an innovation must embody "invention"; and "invention" excludes adjustments, alterations, and improvements that could be expected to result from the exercise of the skill and ingenuity of a mechanic charged with knowledge of all that is disclosed in prior art. This is the exclusion expressed in section 103's requirement that the innovation must not be "obvious" to such a person. *Sakraida v. Ag Pro, Inc., supra,* 425 U.S. at 279, 96 S.Ct. at 1536.

The level of innovation required for patentability is especially high where the device is a combination of old elements, as here. Such a "mechanical combination must utilize a new principle or achieve a new result to cause it to rise to the status of invention." *SSP Agricultural Equipment,*

*Inc. v. Orchard–Rite Ltd.*, 592 F.2d 1096, 1101 (9th Cir. 1979). "The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable." *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950). There must be "unusual or surprising consequences from the unification of the elements"; the old elements must perform an "additional or different function in the combination than they perform out of it." *Id.* As we have repeatedly said, this is a "severe test." *See, e. g., Regimbal v. Scymansky*, 444 F.2d 333, 339 (9th Cir. 1971); *Santa Anita Manufacturing Corp. v. Lugash*, 369 F.2d 964, 967 (9th Cir. 1966); *Bentley v. Sunset House Distributing Corp.*, 359 F.2d 140, 144 (9th Cir. 1966). "Mechanical patents covering a combination of old elements must be scrutinized with care, since it is unlikely that such combinations will amount to patentable invention." *SSP Agricultural Equipment, Inc. v. Orchard–Rite Ltd., supra*, 592 F.2d at 1101.

The Ehrlund "Turn–O–Matic" contains a roll of paper tickets numbered consecutively. The tickets are divided by a punched or perforated line across most of the width of the strip, leaving an uncut margin on both sides. The perforated or punched line is curved or angled toward the user at midpoint. As a ticket is pulled, it passes over a projecting flange having the same width as the flap or tongue. Downward pressure on

the tape brings the uncut, unperforated margins of the tape in contact with cutting edges at each side of the flange, separating the ticket. The flap or tongue of the succeeding ticket, held level by the flange, projects from the dispenser for the next user to grasp.

Appellees' claim of inventive difference in the Ehrlund device "is the guidance structure that cooperates without moving parts with the forwardly directed ticket tongue or flap to dispense intended tickets in a one–hand, one–step pulling operation in which the end ticket is separated from the roll leaving the ticket tongue of the succeeding ticket protruding from the dispenser ready to pull the next ticket." Appellees' Brief, page 16.

Devices for severing and dispensing sheet material in predetermined lengths are old.[3] Such devices commonly disclose means for guiding the material over a cutting edge for separation.[4] Several employ a one–hand, one–step operation and have no moving parts.[5]

In the final analysis, appellees' argument for patentability over the prior art rests upon the interaction between the projecting flange and a ticket strip having flaps or tongues pointed in the feeding direction of the strip. Brief for Appellees, page 31. This development is not inventive over Burr & Davis No. 843,579 (1907), in light of Beloud No. 2,361,528 (1944), or over the so-called "Baggie" patents, Osborn Nos. 3,173,-601 (1965) and 3,229,876 (1966) and Williamson No. 3,098,594 (1963).[6]

---

3. Burr & Davis No. 843,579 ("Means For Holding and Detaching Ribbon Strip Labels") (1907); Ingram No. 1,704,044 ("Dispensing and Severing Device for Rolled Strip Material") (1929); Beloud No. 2,361,528 ("Device to Sever Paper Sales Tax Slips") (1944); Williamson No. 3,098,594 ("Container For Shipping, Storing and Dispensing Sheet Material in Predetermined Lengths") (1963); Osborn No. 3,173,601 ("Dispensing Sheet Material in Predetermined Lengths") (1965); Osborn No. 3,229,876 ("Dispensing Sheet Material in Predetermined Lengths") (1966).

4. Burr & Davis No. 843,579; Ingram No. 1,704,-044; Beloud No. 2,361,528.

5. Burr & Davis No. 843,579; Williamson No. 3,098,594; Osborn No. 3,173,601; Osborn No. 3,229,876.

6. None of these references was cited by the examiner, who relied instead upon four less pertinent patents. Borden No. 2,221,213 (1940) discloses a dispenser permitting the user to tear off a piece of any length desired from a roll of adhesive tape. Burcz No. 3,007,619 (1961) discloses a similar dispenser for thick tapes that are difficult to tear, such as plastic electricians' tape. Kunsch No. 3,088,640 (1963) is a variation of the standard aluminum foil box, having several large teeth on the cutting edge so that foil may be either torn off or perforated, or both, at any intervals desired. German Ap-

Burr & Davis No. 843,579 ("Means for Holding and Detaching Ribbon Strip Labels") discloses a rolled ribbon, divided into individual labels by perforated lines, wound inside the machine. The perforated cloth strip is pulled out and down over a frame or flange causing the perforations to tear, beginning in the center of the perforation, until a single label is separated.[7] The outer casing or cover of the device has an inward curve over the flange that exposes a tongue–shaped portion of the succeeding label resting on the flange. By pulling this exposed tongue out and down over the flange, the next user may detach a label with a single motion. Burr & Davis cuts from the center rather than at the sides, and the next ticket, though exposed, does not protrude. But cutting at the sides and protrusion are found in Beloud No. 2,361,528, a dispenser described as

> leaving a portion of the next section of the material visible and accessible, in order to allow the operator to withdraw the material to the desired position which will permit a section to be separated from the main body of the material and to repeat the operation at will.

Under the "Baggie" patents, a rolled sheet of bags or plastic, divided by perforations, is drawn from a container across a cutting edge having a vertically projecting section at the center. When the perforated line is pulled over this projection or flange, the perforations tear and the forward motion of the next bag is arrested by the flange. Continued pulling completes the separation. The patent description specifies that after each bag is removed its successor protrudes:

> During the act of severance, some small distortion of the sheet material takes place whereby the severed portions thereof on opposite sides of the arresting tab extend outwardly and the corner extremities are supported upon the angular edges of the guide tabs and thus restrained against dropping within the container and out of reach. In this manner the material of the roll (or otherwise packaged material) remains available for convenient grasping whereby withdrawal and severance of the next successive length may be accomplished.

Appellant argues that the Baggie device requires the user to lift the next bag over the projecting flange before it can be removed. This problem could be solved by curving or angling the line of perforations between bags to produce one or more tabs or tongues. Appellant recognizes that "[a] major difference between this prior art and the claims of the Turn–O–Matic patent is the construction of the ticket strip recited in the Turn–O–Matic claim."

Because the description of the ticket strip is found in the preamble rather than in the body of the claims of the Ehrlund patent,[8]

---

plication Disclosure No. 1,218,492 (German Federal Republic 1966) discloses a device for separating punched data processing tape and at the same time marking the direction in which the tape is traveling.

7. The district court found that Burr & Davis No. 843,579 "does not disclose a flange for temporarily arresting movement of the ticket tongue that is directed in the feeding of the strip as specified in" the Ehrlund patent. Whether or not any portion of the projecting separation edge of the Burr & Davis device is called a "flange," the Burr & Davis patent discloses a guiding means that arrests the tape, allowing separation. Similar semantic distinction clouded the district court findings as to Beloud No. 2,361,528 and the "Baggie" patents, all of which disclose arresting mechanisms.

8. Claim 1 of the Ehrlund patent, for example, reads:

> A device for tearing off pieces of the same predetermined length from a roll of fed flexible strip, *said strip having punched lines forming tongues equally spaced along said strip with their spacing equal to said predetermined length and directed in the feeding direction for said strip, whereby the portion of each tongue which is firmly connected to the remainder of the strip is perpendicular to the longitudional direction of the strip,* said device comprising a casing for said strip roll, said casing having side walls and an open top, a cover pivotally connected to said casing and closing said top, said cover having an outwardly extending portion, another portion integral with the first–mentioned portion and extending in a downwardly direction relatively to the cover, said casing having a portion extending substantially parallel to the first–mentioned portion but spaced therefrom to form a gap for the passage of the strip out of

the parties debate whether it is an element of the combination claimed by Ehrlund.[9] It is unnecessary to resolve the issue. Based on the record before us, the essentials of the strip's construction are in any event old in the art. Suk No. 1,575,081 (1926) claims:

A record strip comprising a signal [sic] oblong length of flexible fibrous material having equally spaced portions thereof scored transversely to provide a series of detachable sections, the scoring between adjacent sections extending along an irregular shaped line so that each section upon detachment will have at one end a projecting tongue.

Appellees contend the Ehrlund device meets the not "obvious" standard because the combination of old elements is "synergistic," i. e., "result[s] in an effect greater than the sum of the several effects taken separately." *Anderson's Black Rock v. Pavement Co.*, 396 U.S. 57, 61, 90 S.Ct. 305, 308, 24 L.Ed.2d 258 (1976). Appellees cite the following exchange with their expert witness:

Q. In your opinion, does the device of the patent produce a synergistic result?

A. Yes, it does, indeed. As I have already described it, it permits several things to happen at the same time. That is it permits a ticket, a single ticket, to be dispensed with one hand without moving parts other than the ticket strip itself in the casing, and in such a way that the next ticket is not touched by the person who pulls off the previous ticket, or anyone else for that matter."

This description accurately mirrors Borden's 1940 patent (No. 2,221,213) for a simple

the casing, a flange for temporarily arresting movement of said tongue integram with the third–mentioned portion and extending close to the second–mentioned portion but spaced therefrom to form a gap for the continuing passage of the remainder of the strip, and tear–off portions on either side of said flange connecting the base of said flange to the side walls of the casing arranged for the cut–off to the remainder of the strip.

(Emphasis added.)

cellophane tape dispenser, cited as prior art by the patent examiner.

The Ehrlund combination is an improvement over previous devices in this field, "perhaps producing a more striking result," *Sakraida v. Ag Pro, Inc., supra*, 425 U.S. at 282, 96 S.Ct. at 1537. But it does not reflect the application of a new principle or the achievement of a surprising or unexpected result required to satisfy the severe test for patentability of a new combination of elements old in the art.

The projecting flange temporarily arrests the movement of the tape, separates the tongue from the tape, and guides the tongue horizontally toward the user as in Burr & Davis, the cutting edge severs the tape at the sides as in Beloud, the tongue of the succeeding ticket serves as a handle for the next user to grasp as in Suk, the elements combine to permit a single segment of the tape to be dispensed with a one–step pulling operation, without moving parts, as in Burr & Davis and the Baggie structure.

As we said in *Kamei–Autokomfort v. Eurasian Automotive Products*, 553 F.2d 603, at 609 (9th Cir. 1977), quoting our earlier decision in *Rex Chainbelt Inc. v. Harco Products, Inc.*, 512 F.2d 993, 1000 (9th Cir. 1975): "What we have here is: 'an improved product but not an innovatively different one . . . [W]e see the development and refinement of an old concept . . . but not an inventive or new approach to the problem.'"

The commercial success of the Ehrlund device "cannot fill the gap." *Exer–Genie, Inc. v. McDonald*, 453 F.2d 132 (9th Cir. 1971). *See SSP Agricultural Equipment, Inc. v. Orchard–Rite, Ltd., supra*, 592 F.2d at 1101.

9. *Marston v. J. C. Penney Co.*, 353 F.2d 976, 986 (4th Cir. 1965); *Stradar v. Watson*, 244 F.2d 737, 741 (D.C.Cir.1957); *Kropa v. Robie*, 187 F.2d 150, 38 CCPA 858 (1951). Appellant comes close to arguing that the tape is part of the claimed combination for the purpose of determining validity but not for the purpose of determining infringement, a position forced upon them by the fact that appellees did not manufacture or distribute the tape itself.

## II

### Trademark Infringement and Unfair Competition

The district court's holding that appellant's use of the name Take–A–Turn infringed appellees' registered Turn–O–Matic trademark and that appellant had engaged in unfair competition by "palming" off appellant's dispenser as that produced by appellee are factually and legally unassailable.

Appellant was a distributor of appellees' Turn–O–Matic ticket dispenser in an assigned territory for over seven years. He became dissatisfied with the relationship. When appellee introduced its new dispenser based upon the Ehrlund patent, appellant set about to copy it. In less than a month he had obtained quotations for the manufacture of a like dispenser from a producer of plastic products. He continued to distribute appellees' Turn–O–Matic until his dispenser became available. About a year later appellant began distributing his dispenser under the name Take–A–Turn. Appellant's dispenser is virtually identical with appellees' Turn–O–Matic in operation, and is almost indistinguishable in appearance, even to the distinctive red color and the location and type-style of the trade name. Appellant's advertising brochure for Take–A–Turn was copied from appellees' Turn–O–Matic brochure. Appellant employed the same stock number he had previously used in the sale of Turn–O–Matic dispenser and parts. He sold the Take–A–Turn dispenser in the same territory in which he had previously sold the Turn–O–Matic, and to the same customers. Customers ordered Turn–O–Matic by name but were delivered Take–A–Turn.

■■■ Appellees' evidence fully supported the district court's findings that appellant's Take–A–Turn trademark was likely to and did cause confusion, mistake, and deception as to the origin of the dispenser, that the appearance of appellees' dispenser, copied by appellant, had acquired a secondary meaning identifying appellee as its source, and that appellant deliberately intended to pass his goods off as those of appellee. As a matter of hornbook law, these facts established both trademark infringement and unfair competition.

Appellant argues that "Turn–O–Matic" is descriptive of the use of appellees' dispenser and is therefore a "weak" mark. Appellees respond that the mark has become "incontestable" under 15 U.S.C. § 1065, and therefore cannot be challenged on the ground that it is descriptive. Appellant answers that he is not challenging the validity of appellees' mark but is asserting that because of the weakness of the mark there is no likelihood of confusion. The short answer is that even if this factor had the probative tendency appellant suggests, it was overwhelmed by appellees' evidence that confusion was likely, intended, and occurred.

Appellant argues that because the name "SGT Enterprises" (under which Tveter conducted business) was printed on appellant's dispenser there could have been no confusion as to source. Although proper labeling will usually preclude confusion, see *American Rolex Watch Corporation v. Ricoh Time Corp.*, 491 F.2d 877, 879 (2d Cir. 1974); *Bose Corp. v. Linear Design Labs, Inc.*, 467 F.2d 304, 310 (2d Cir. 1972), the overwhelming evidence in this instance is that confusion did occur. Appellant cites *West Point Manufacturing Co. v. Detroit Stamping Co.*, 222 F.2d 581 (6th Cir. 1955), but in that case the court found the labeling was in fact sufficient "to avoid confusing the public as to the producer or the source of the product". *Id.* at 596. The court recognized that "when the imitation is likely to deceive prospective customers who care about source . . . the imitator is guilty of unfair competition." *Id.*

Appellant was known in the trade as a distributor of appellees' product. Under such circumstances, the addition of his own label "is an aggravation and not a justification." *Menendez v. Holt*, 128 U.S. 514, 521, 9 S.Ct. 143, 144, 32 L.Ed. 526 (1888); see *A. T. Cross Co. v. Jonathan Bradley Pens, Inc.*, 470 F.2d 689, 692 (2d Cir. 1972).

There was evidence that appellees used the mark "Turn–O–Matic" on their earlier

dispenser together with the words "Patent Pending" when no patent application on this dispenser was in fact pending. Appellant argues that this misuse bars judicial enforcement of appellees' trademark rights. But "misconduct in the abstract, unrelated to the claim to which it is asserted as a defense, does not constitute unclean hands." *Republic Molding Corp. v. B. W. Photo Utilities,* 319 F.2d 347, 349 (9th Cir. 1963). "What is material is not that plaintiff's hands are dirty, but that he dirtied them in acquiring the rights he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendant." *Id.* No relationship is suggested between appellees' asserted misuse and the acquisition of appellees' trademark rights; no other reason, arising out of the misuse, is advanced that would make it inequitable to enforce those rights.

■ Appellant argues that since appellees' dispenser was not patentable, appellant had a right to copy it in light of *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); and *Compco Corp. v. Day–Brite Lighting, Inc.,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964). Under the rule of these decisions, however, copying may constitute evidence which, when accompanied by proof of confusion as to source or deliberate palming off, as in this case, may support a cause of action for unfair competition upon which appropriate relief may be founded. *Compco Corp., supra,* 376 U.S. at 238, 84 S.Ct. at 782.

## III

### *Remedy*

The judgment and the injunction issued pursuant to the judgment must be modified in light of our decision that the Ehrlund United States Patent 3,885,724 is invalid; that the trademark "Turn–O–Matic" is valid and infringed by the mark "Take–A–Turn;" that the configuration of appellees' dispenser has acquired a secondary meaning reflective of its source, and that appellant has engaged in unfair competition by passing off appellant's dispenser as originating from the same source as appellees' dispenser. These adjustments are best left initially to the district court, but it may be helpful to comment upon two matters.

■ First, it is clear from the decisions in *Sears, Roebuck & Co. v. Stiffel Co., supra,* and *Compco Corp. v. Day–Brite Lighting, Inc., supra,* that an injunction against copying the configuration of appellees' dispenser cannot be based upon California unfair competition law. This does not, however, preclude an injunction under state law that will prevent the palming off of appellant's product as that of appellees, nor an injunction requiring that appellant's product "be labeled or that other precautionary steps be taken to prevent customers from being misled as to the source." *Sears, Roebuck & Co., supra,* 376 U.S. at 232, 84 S.Ct. at 789. *See generally,* Cal.Civ. Code § 3369; *Tomlin v. Walt Disney Productions,* 18 Cal. App.3d 226, 231–235, 96 Cal.Rptr. 118, 120–123 (Ct.App.1971); *Components for Research, Inc. v. Isolation Products, Inc.,* 241 Cal.App.2d 726, 730–731, 50 Cal.Rptr. 829, 832 (Ct.App.1966).

■ The more difficult question is whether *Sears* and *Compco* preclude an injunction based upon § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) against copying the exterior design insofar as it incorporates nonfunctional features and has acquired a secondary meaning. *See Truck Equipment Service Co. v. Freuhauf Corp.,* 536 F.2d 1210 (8th Cir. 1976); *American Rolex Watch Corp. v. Ricoh Time Corp., supra,* 491 F.2d at 879. The district court should reconsider this question free of the distracting assumption that an injunction against copying appellees' device was in any event justified because of infringement of the Ehrlund patent. Even if such an injunction would not be barred by *Sears* and *Compco,* it could not be so broadly drawn as to preclude appellant from using a circular casing to enclose the circular roll of tickets, a common and essentially utilitarian feature of tape dispenser designs. *See Application of Honeywell, Inc.,* 532 F.2d 180, 182–83 (Cust. & Pat.App.1976).

Second, the provision of the injunction requiring appellant to deliver up for impoundment and destruction devices and materials infringing the Ehrlund patent or the "Turn–O–Matic" trademark will require reconsideration and modification for the same reasons. In addition, however, appellant contends this provision exceeds the pretrial stipulation of the parties that "[o]nly the remedy of injunction is sought." Appellant objects on similar grounds to the requirement that appellant notify future customers that he does not sell products under the marks "Turn–O–Matic" and "Take–A–Turn." But orders for impoundment or destruction and for issuing remedial notices are no less injunctive because they impose affirmative requirements to act. Neither provision imposes liability "for damages, costs, and attorney's fees" in contravention of the parties' agreement.

U.S. Letters Patent No. 3,885,724 is declared invalid. The judgment and injunction are vacated and the cause remanded for further proceedings consistent with this opinion.