JOHN CHARLES DESIGNS, INC.
a California corporation,
Plaintiff,

v.

QUEEN INTERNATIONAL DESIGN,
INC., a California corporation,
Defendant.

No. 96–0365 DDP (JRx).

United States District Court,
C.D. California.

Oct. 4, 1996.

Kit M. Stetina, William J. Brucker, Matthew Arlen Newboles, Stetina Brunda & Buyan, Laguna Hills, CA, for plaintiff.

L. Stephen Albright, Wasserman Comden & Casselman, Tarzana, CA, for defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

PREGERSON, District Judge.

Plaintiff/Counterclaim Defendant JOHN CHARLES DESIGNS, INC.'s ("JCD") Motion for Summary Judgment of Patent Infringement and Patent Validity and Defendant/Counterclaimant QUEEN INTERNATIONAL DESIGN, INC.'s ("QUEEN") Cross Motion for Summary Judgment came before the Court on September 23, 1996. After consideration of the parties' oral and written arguments, the Court grants Plaintiff JCD's Motion for Summary Judgment on both claims.

### BACKGROUND

Competitors JCD and QUEEN design, manufacture, and market a wide variety of furniture products. Both companies offer a line of furniture (i.e., a sofa, loveseat, and chair in a particular style) that utilizes an armrest distinguished by a "crescent-shaped void extending through the entire length of the armrest." (Genova Decl. ¶ 4; Dubin Decl. ¶ 4.) The design of the armrest is the subject of this litigation.

JCD has marketed its version of these products since the beginning of 1994 under the designation "Model 808." On October 3, 1994, JCD filed a United States design patent application, claiming that the armrests were a unique furniture design. This application was approved on December 5, 1995 and JCD now owns U.S. Design Patent No. Des. 364,753.

JCD has had significant commercial success with this furniture line. Since its introduction, sales of Model 808 products have totaled more than $1.5 million, with nearly 2,300 pieces sold to date. (Genova Decl. ¶ 8.) In addition, JCD has licensed its patented design to another large furniture manufacturer. (Newboles Second Decl. ¶¶ 9–10, Ex. N.)

QUEEN, which operates under the name Kamish Designs, refers to its similar furniture line as "Style No. 117[1]." QUEEN claims that it began developing this line in January 1993 and that it first sold a sofa prototype incorporating the armrest design in August 1993. (A. Kamish Decl. ¶¶ 4–11; Dubin Decl. ¶¶ 4–9.) However, QUEEN's first recorded sale of a Style No. 117 sofa did not occur until October 26, 1993, less than one year before JCD's design patent application. (A. Kamish Decl. ¶ 10.) QUEEN did not seek to patent the design.

On January 19, 1996, JCD filed this action against QUEEN, alleging patent infringement and unfair competition under federal law and unfair competition and deceptive trade practices under California law. Defendant QUEEN subsequently filed a Counterclaim alleging similar claims against JCD. Both now move for summary judgment.

### DISCUSSION

A. *Applicable Law of Summary Judgment.*

Summary judgment, in patent as in other cases, is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Hodosh v. Block Drug Co., Inc.,* 786 F.2d 1136, 1141 (Fed.Cir.) (citing Fed.R.Civ.P. 56(c)), *cert. denied,* 479 U.S. 827, 107 S.Ct. 106, 93 L.Ed.2d 55 (1986). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact, and all justifiable inferences must be resolved in the light most favorable to the nonmovant. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). However, the moving party need not disprove matters on which the

---

**1.** QUEEN also refers to this furniture line as "the     Valiant Collection." (Def.'s Countercl. ¶¶ 4 & 6.)

nonmovant will have the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552–53.

The movant can meet its burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case," thus shifting the burden to the nonmovant to prove otherwise. *Id.,* 477 U.S. at 325, 106 S.Ct. at 2554. However, "[t]o create a genuine issue of fact, the nonmovant must do more than present *some* evidence on an issue it asserts is disputed." *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.,* 853 F.2d 1557, 1560 (Fed.Cir.1988). Rather, the nonmovant must provide "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). If, instead, the nonmovant's evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

In the case at bar, Plaintiff JCD moves for summary judgment on the issue of patent infringement. Defendant QUEEN opposes this motion and makes a cross-motion for summary judgment on the ground that JCD's patent is invalid and thus could not be infringed. In order to address the infringement claim, the Court must first address the validity of the patent.

█ The burden of proving the invalidity of a patent lies with the alleged infringer. 35 U.S.C. § 282 (1995). Moreover, duly issued U.S. patents are presumed valid. *Id.* This statutory presumption can be overcome only by clear and convincing evidence. *See, e.g., Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,* 45 F.3d 1550, 1555 (Fed.Cir.1995).

█ Since QUEEN is asserting the defense of invalidity, it must demonstrate by clear and convincing evidence that there is a genuine issue of disputed material fact as to the validity of JCD's patent. QUEEN challenges the validity of JCD's patent on two grounds: (1) that the "on sale" bar provision of 35 U.S.C. § 102(b)[2] precluded JCD from obtaining a valid patent and (2) that the design was "obvious" and thus 35 U.S.C. § 103 precluded JCD from obtaining a valid patent.

### B. *The "On Sale" Bar.*

█ An inventor loses his or her right to a patent if the invention was "on sale in this country more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b) (1984). The party asserting the on sale bar must demonstrate by clear and convincing evidence that there was a definite sale or offer to sell more than one year before the patent application. *Ferag AG v. Quipp, Inc.,* 45 F.3d 1562, 1566 (Fed.Cir.) (citations omitted), *cert. denied,* —— U.S. ——, 116 S.Ct. 71, 133 L.Ed.2d 31 (1995). "A single sale or offer is enough to bar patentability," but mere preparation for sale is insufficient. *Intel Corp. v. United States Int'l Trade Comm'n,* 946 F.2d 821, 830 (Fed.Cir.1991). Moreover, the overall appearance of the prior invention must be virtually identical to the design of the challenged patent. *KeyStone Retaining Wall Sys. v. Westrock, Inc.,* 997 F.2d 1444, 1451–52 (Fed.Cir.1993). Finally, the ultimate determination that a product was placed on sale, although based on the underlying facts, is a question of law. *Id.* at 1451.

█ In this case, QUEEN argued that JCD's patent is invalid because QUEEN

---

**2.** QUEEN also contests the validity of JCD's patent under 35 U.S.C. §§ 102(a), (f) & (g). As to the first provision, the defense of "anticipation" is very similar to QUEEN's claim of obviousness under 35 U.S.C. § 103 (1995). 1 Donald S. Chisum, *Patents* § 3.01 (1996). If anything, it is easier for a defendant to prove that a design is obvious because anticipation requires "strict identity" between the prior art and the challenged design. *Glaverbel,* 45 F.3d at 1554. The "prior art" that QUEEN has submitted to support its argument is not identical to JCD's patented design. Thus, QUEEN cannot successfully challenge JCD's patent on the grounds of anticipation.

As to the latter claims, QUEEN's Opposition Brief merely makes conclusory statements alleging that these statutory provisions invalidate JCD's patent. However, QUEEN does not provide any authority or evidentiary support for its allegations other than quoting the statutory language. (Def.'s Opp'n Brief at 12–13.) As such, it has not met its burden of proving invalidity by clear and convincing evidence, and the Court accordingly denies QUEEN's Motion for Summary Judgment on these claims.

"produced several prototypes of Model 117 and sold them as floor samples during August and September 1993," which was more than one year before JCD applied for its patent. (Def.'s Opp'n Brief at 10; A. Kamish Decl. ¶¶ 5–8.) However, "testimony by an alleged inventor asserting priority over a patentee's rights ... must be supported by some type of corroborating evidence." *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 776 (Fed.Cir.1995) (internal citations omitted). Here, QUEEN has not provided any corroborating evidence that would tend to prove these allegations.[3] In the absence of such evidence, and since QUEEN has the burden of proof, the Court finds that QUEEN has failed to overcome the presumption of patent validity. Accordingly, the Court rejects QUEEN's argument for patent invalidity based on 35 U.S.C. § 102(b).

## C. The "Obviousness" Bar.

▮▮▮▮▮ QUEEN also argued that JCD's patent is invalid because "the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a) (1995). According to the Supreme Court, this analysis requires a determination of: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; and (3) the level of ordinary skill in the pertinent art. *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). In addition, secondary considerations such as commercial success, licensing to third parties, and unpermitted copying can provide evidence that a design was not obvious. *Glaverbel*, 45 F.3d at 1555. In the end, however, the obviousness of a design is a conclusion of law, based upon the factual underpinnings. *Jurgens v. McKasy*, 927 F.2d 1552, 1558 (Fed.Cir.), *cert. denied*, 502 U.S. 902, 112 S.Ct. 281, 116 L.Ed.2d 232 (1991).

### 1. The scope and content of the prior art.

▮▮▮▮▮ The first step in the analysis is to determine "whether there is a reference to something in existence, the design characteristics of which are basically the same as the claimed design." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed. Cir.) (internal citations omitted), *cert. denied*, 510 U.S. 908, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993). These prior art references may take the form of other patents, printed publications, or actual items which were in public use more than one year prior to the contested patent application. *UMC Elec. Co. v. United States*, 816 F.2d 647, 655 (Fed.Cir. 1987), *cert. denied*, 484 U.S. 1025, 108 S.Ct. 748, 98 L.Ed.2d 761 (1988). Such references must have existed at the time of invention, and hindsight may not be used to determine that the challenged design was obvious. *Id.* Moreover, in conducting this analysis, the court must look at the design as a whole, rather than merely referencing its component parts. *Id.* If the prior art merely suggests "components of the [challenged] design, but not its overall appearance, an obviousness rejection is inappropriate." *In re Harvey*, 12 F.3d 1061, 1063 (Fed.Cir.1993).

In the case at bar, the design at issue is that of the armrests manufactured and marketed by JCD. As such, the relevant scope and content of the prior art includes various armrests on a variety of furniture items each incorporating design features similar to JCD's patent.

### 2. Differences between the prior art and the patented design.

QUEEN submitted several photographs of alleged prior art in support of its argument that JCD's design was obvious. (Turner Decl., Exs. A–C.) An examination of the furniture in the photos shows that the arm-

---

3. The Court notes that QUEEN provided an invoice indicating a sale of Model 117 furniture on October 26, 1993. (*See, e.g.*, A. Kamish Decl. ¶ 10, Ex. A.) QUEEN argued that this sale, occurring 23 days short of the required one year period, indicates that the design must have been on sale more than one year prior to JCD's patent application of October 3, 1994. (Def.'s Opp'n Brief at 10.) According to QUEEN, "simple logical deduction" dictates that "[we] must have prepared and distributed advertisements, flyers and catalogs, and the like long before October 26, 1993." *Id.* QUEEN, however, failed to present *any* evidence to support this "deduction." Thus, this argument does not rise to the level of clear and convincing proof.

rests bear some resemblance to JCD's Model 808 in that they employ a variation of an "outward scroll-arm" design. However, none of the armrests are overly similar, and QUEEN has not offered the Court any assistance other than its bald assertion that the pieces are virtually identical.[4] (Turner Decl. ¶¶ 4 & 10.) Thus, these photos alone do not convince the Court that JCD's patented design was obvious.

### 3. The level of ordinary skill in the pertinent art.

For design patents, obviousness is determined from the vantage of the "designer of ordinary skill or capability in the field to which the design pertains." *L.A. Gear*, 988 F.2d at 1124. This hypothetical designer is presumed to have perfect knowledge of all pertinent prior art. The subjective knowledge of particular designers is not controlling. *Tveter v. AB Turn–O–Matic*, 633 F.2d 831, 834 (9th Cir.1980), *cert. denied*, 451 U.S. 911, 101 S.Ct. 1983, 68 L.Ed.2d 300 (1981). When analyzing this factor, courts may consider "opinion testimony by experts concluding that an invention would or would not have been obvious." *Petersen Mfg. Co. v. Central Purchasing, Inc.*, 740 F.2d 1541, 1548 (Fed.Cir.1984). However, such opinions do not necessarily preclude the grant of summary judgment against the offering party because the obviousness of a design is a question of law for the court to resolve. *Id.*

QUEEN offered the Declarations of William Dubin and Anthony Kamish as proof that JCD's design would have been obvious to furniture designers of ordinary skill. Both claimed to have extensive experience in the furniture industry, including furniture design. (Dubin Decl. ¶ 3; A. Kamish Decl. ¶¶ 3–4.) According to Dubin and Kamish, QUEEN did not seek to patent the design itself because it "had been in use for decades, if not centuries, and [ ] the design was not novel or unique enough to merit a patent." (A. Kamish Decl. ¶ 12.) As a consequence, QUEEN has asserted that JCD's patented design would have been obvious to other furniture designers of ordinary skill.

However, other than these self-serving[5] declarations, QUEEN has not offered any further evidence that JCD's design would have been obvious to a furniture designer of ordinary skill.[6] As noted previously, the unsupported testimony of the alleged infringer and its employees is entitled to little evidentiary weight and will not preclude summary judgment. *See, e.g., Price v. Symsek*, 988 F.2d 1187, 1195 (Fed.Cir.1993) (noting that crediting such testimony would "offer great temptation to perjury, and would have the effect of virtually precluding the adverse party from the possibility of rebutting such evidence"). Thus, QUEEN has not met its burden on this issue.

### 4. Secondary considerations.

Finally, objective evidence such as commercial success, unpermitted copying, or licensing agreements with third parties is relevant to the question of a design's obviousness and must be considered. *Glaverbel*, 45 F.3d at 1555. However, when considering such evidence, courts must be certain that the commercial success, copying, and/or licensing agreements result from the patented design and not from other factors, such as superior business acumen or effective advertising. *Petersen Mfg.*, 740 F.2d at 1549.

---

4. The Court notes that the Declaration of Albert G. Turner, Jr. carries little evidentiary weight because he is merely the attorney for QUEEN and does not qualify as an expert in furniture design. Thus, the Turner Declaration and its attached exhibits merely offer evidence of possible prior art, and his conclusions as to the prior art's significance is not probative on the issue of whether the design would be obvious to a furniture designer of ordinary skill.

5. Kamish is the principal owner of QUEEN and Dubin has been employed by the company for ten years.

6. QUEEN also "calls upon the Court's own understanding and reference to furniture" to help resolve the question of the design's obviousness. (Def.'s Opp'n Brief at 15.) However, despite the analysis' apparently subjective nature, neither the "simplicity of the invention" nor its "ready understandability by a judge" allows the Court to arbitrarily inject its opinions into the analysis. *See, e.g., Chore–Time Equip. v. Cumberland Corp.*, 713 F.2d 774 (Fed.Cir.1983). Instead, the burden remains on QUEEN to prove or disprove that the design would have been obvious to a furniture designer of ordinary skill.

Moreover, such objective evidence cannot override or supplant a clear finding of obviousness based on the three factors discussed above. *See, e.g., Merck & Co., Inc. v. Biocraft Labs., Inc.,* 874 F.2d 804, 809 (Fed.Cir.), *cert. denied,* 493 U.S. 975, 110 S.Ct. 498, 107 L.Ed.2d 502 (1989).

Here, JCD has asserted that its Model 808 furniture line has been a "tremendous commercial success, with nearly $1.5 million" in sales and has been licensed to another furniture manufacturer. (Newboles Second Decl. ¶¶ 9–10, Ex. N.) Although the Court notes that this evidence is of limited value without further details,[7] the evidence nevertheless supports JCD's claim that its design was not obvious.

QUEEN has failed to establish by clear and convincing evidence that JCD's patent is invalid. Accordingly, the Court denies QUEEN's cross-motion on the issue of patent validity.

D. *Infringement of the Patent.*

■ Once the validity of a patent has withstood challenge, the patent-holder then has the burden of proving infringement by a preponderance of the evidence. *L.A. Gear,* 988 F.2d at 1124. Infringement is a question of fact and is defined as the unauthorized manufacture or sale of "the patented design or any colorable imitation thereof." *See id.* (citing 35 U.S.C. § 289). For design patents, infringement requires a showing that the accused design is "substantially the same" as the patented design. *Id.* In conducting this analysis, the patented design must be viewed in its entirety. *Id.* at 1125. However, "minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Litton Sys., Inc. v. Whirlpool Corp.,* 728 F.2d

1423, 1444 (Fed.Cir.1984). If, in the eye of an ordinary observer, "the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *L.A. Gear,* 988 F.2d at 1124 (quoting *Gorham Co. v. White,* 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1871)).

■ In the case at bar, QUEEN has not seriously contested that the armrests attached to its Style No. 117 furniture line are not identical to JCD's patented design.[8] Instead, QUEEN appears to rest its argument solely on the ground that JCD's patent is invalid. However, as discussed, QUEEN has failed to meet its burden of proof on this issue. As such, QUEEN has failed to raise a genuine issue of disputed material fact, and the Court therefore grants JCD's Motion for Summary Judgment and denies QUEEN's Cross–Motion.

## CONCLUSION

QUEEN has failed to raise a genuine issue of disputed material fact with regard to either the validity of JCD's patent or QUEEN's patent infringement. Therefore, JCD's Motion for Summary Judgement is granted and QUEEN's Cross–Motion is denied.

**IT IS SO ORDERED.**

7. For example, information about the company's total sales before and after the introduction of the Model 808 line would enable the Court to better understand the significance of the design's commercial success.

8. In its Opposition Brief, QUEEN makes the general statement that the designs are similar "only to the extent that they are furniture products which incorporate several similar designs, all of which are obvious, and none of which are novel or unique." (Def.'s Opp'n Brief at 4.) It

then states that "no likelihood of confusion exists between the brands." (*Id.* at 5.) However, QUEEN makes no attempt to explain these statements or the fact that it directly contradicts this conclusion in its counterclaim. In any case, a cursory inspection of the two companies' products reveals that they are indistinguishable, and mere conclusory language to the contrary does not create a genuine issue of disputed material fact for purposes of summary judgment.